**2023 BNH 004**        **Note:  This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                      Bk. No. 17-10796-BAH
                                                            Chapter 7
Joseph A. Foistner,
              Debtor


Victor W. Dahar Trustee,
              Plaintiff


v.
                                                            Adv. No. 19-01033-BAH

Joseph A. Foistner,
Foistner Law Offices, P.C.,
American Corporate Tax Attorneys and
Tax Accountants, P.C.,
Laurie J. Foistner,
Jennifer Stanhope, a/k/a Jennifer Stanhope Prive
Raymond Atkisson,
JFL Nominee Trust,
DCMV Trust,
Red River Realty Trust,
Jane and John Doe Defendants (1-10)
              Defendants

*Attorneys for Plaintiff*
*William S. Gannon, Esq.*
*William S. Gannon PLLC*
*Manchester, New Hampshire*

*Eleanor Wm Dahar, Esq.*
*Victor W. Dahar, Esq.*
*Victor W. Dahar Professional Association*
*Manchester, New Hampshire*

## **MEMORANDUM OPINION AND ORDER**

## I.          Introduction

The Court has before it the Motion to Dismiss Plaintiff's Complaint filed by, among others, Joseph A. Foistner (the "Debtor") and his wife, Laurie J. Foistner ("Mrs. Foistner") (collectively, the "Defendants")[1] (Doc. No. 10) (the "Motion").[2]  The chapter 7 Trustee filed an objection to the Motion (Doc. No. 83) (the "Objection"), which he supplemented twice.  See Doc. Nos. 82 (the "First Supplemental Objection") and 229 (the "Second Supplemental Objection").  In relation to this Motion and certain actions taken by one or both Defendants, the Trustee has sought leave to amend the Complaint to add a party and/or assert additional claims against the Defendants and newly added defendants.  See Doc. No. 263.[3]  For the reasons discussed herein, the Motion is **GRANTED** in part, **DENIED** in part, and the Trustee is granted leave to file an amended Complaint.

## II.          Jurisdiction

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] Although defendant Ray Atkisson initially joined the Motion, the Trustee resolved the estate's claims against Mr. Atkisson via a settlement agreement, which the Court approved after a hearing held on December 28, 2022 (Doc. Nos. 207, 250) (the "Atkisson Settlement").  The Trustee also resolved his claims against defendant Jennifer Stanhope Prive ("Ms. Prive") via a settlement agreement, which the Court approved on August 26, 2022 (Doc. Nos. 78 and 144) (the "Prive Settlement").  Thus, the Court will refer to the Motion as having been filed by the Defendants for the purposes of this opinion.

[2] The Complaint also named as defendants two closely held corporations, which are Foistner Law Offices, P.C., formerly known as Law Offices of Joseph A. Foister & Affiliates, P.C., ("FLO") and American Corporate Tax Attorneys and Tax Accountants, P.C. ("American Corporate") (collectively, the "Corporate Defendants"), and three trusts and their respective trustees and/or beneficiaries, which include the JFL Nominee Trust ("JFL"), the DCMV Trust ("DCMV"), and Red River Realty Trust ("Red River") (collectively, the "Trust Defendants").

[3] The Court takes judicial notice of Mrs. Foistner's Declaration at Docket Entry 253 and the Notice of Revocation of Trustee attached thereto as an exhibit (Doc. No. 253-1) (the "Notice").  According to these documents, Mrs. Foistner, in her capacity as the trustee of DCMV, removed Ms. Prive as a contingent beneficiary of DCMV on April 21, 2022, and named (on April 22, 2022) Peter Shuhlen of Blammerberg 83 Weil der Stadt, Germany to be a 100% beneficiary of DCMV upon her death.  The Notice also indicates that Mrs. Foistner revoked Mr. Atkisson's appointment as trustee of DCMV on July 10, 2022.

III.    **Factual Background & Procedural History[4]**

A.  Pre-Petition Events

In 1998, the Debtor formed JFL, a Massachusetts revocable nominee trust (Complaint ¶ 12).  On June 4, 2001, the Debtor filed Articles of Organization with the Secretary of the Commonwealth of Massachusetts Corporate Division to incorporate FLO as a professional corporation offering legal services.[5]  FLO's Articles of Organization named the Debtor as the president, treasurer, clerk, director, sole shareholder, and registered agent.  At the time of its incorporation, both FLO's principal office and the business address of its registered agent in Massachusetts were "100 State Street, Boston, MA 02109, 11th Floor."  On December 2, 2011, the Debtor, acting in his capacity as FLO's registered agent, filed a Statement of Change of Registered Office Address, updating both FLO's registered business address (and thus his business address as FLO's registered agent) to "300 Brickstone Square, Suite 201, Andover, MA 01810."  A year later, the Debtor filed a Statement of Change of Supplemental Information, indicating that the street address for FLO's president, treasurer, secretary, and director had changed to "Box 240 RT 13, New Boston, NH 03070 USA."  From 2001 through 2016, FLO filed its annual reports as required by the Secretary of the Commonwealth.

---

[4] The following facts and procedural history consist of the factual allegations contained in the Complaint, as well as certain facts that are "not subject to reasonable dispute because [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  See Fed. R. Evid. 201.  See also Swindol v. Aurora Flight Scis. Corp., 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records accessible through Mississippi Secretary of State's and Virginia State Corporation Commission's websites); Ramos v. White (In re Ramos), Case No. 19-10789-MSH, 2020 WL 5240382, at *2 n.6 (Bankr. D. Mass. Sept. 2, 2020) (taking judicial notice of a limited liability company's corporate filings in the Massachusetts Corporate Database and corporate address contained therein).  The factual allegations derived from the Complaint are indicated by a reference to the paragraph number(s).  For purposes of deciding the Motion, the Court takes all well-pleaded factual allegations as true.

[5] The Court takes judicial notice of FLO's Articles of Organization, which appear in the Massachusetts Corporate Database.  See In re Ramos, 2020 WL 5240382, at *2 n.6 (taking judicial notice of a limited liability company's corporate filings in the Massachusetts Corporate Database and corporate address contained therein).

On May 12, 2012, the Debtor formed Red River (Complaint ¶ 14), a Massachusetts revocable nominee trust (Complaint ¶ 14).  The Debtor is the trustee and sole beneficiary of Red River while living, and Ms. Prive will become Red River's sole beneficiary upon his death (Complaint ¶ 14).

The Trustee alleges that the Debtor engaged in ("or pretended to engage in") various businesses, including the development of a residential subdivision in New Boston, New Hampshire (the "New Boston Development") (Complaint ¶ 20).  The New Boston Development, which purported to include a "residence" or "offices" for FLO and other entities, was a scheme that was [funded] by loans obtained from federally insured lending institutions, lenders, and/or private investors (Complaint ¶ 20).[6]  The New Boston Development scheme required the participation of the Debtor, Mrs. Foistner, Mr. Atkisson, Ms. Prive, the Trust Defendants and their respective trustees and beneficiaries, and one or more "Jane and John Doe Defendants" (Complaint ¶¶ 20-21).

In October of 2016, the Debtor completed a loan application and documents on behalf of FLO to secure a loan in the amount of $250,000 from Newtek (the "Newtek Loan") (Complaint ¶ 22).  When applying for the Newtek Loan, the Debtor provided Newtek with a personal financial statement dated December 31, 2016, which listed his assets as "Notes . . . Mortgages Receivable" in the amount of $1,848,659; "104 Foxberry Drive Trust Property" with a value of $11,884,345, and "Equity and Assets" with a value of $11,884,345 (Complaint ¶ 92).  The statement did not reflect any debts or liability owed by the Debtor to Mrs. Foistner, FLO, JFL, Red River, DCMV or any other "Foistner Entity" (Complaint ¶ 92).

---

[6] The Court notes that while the Trustee describes the New Boston Development as a "scheme," paragraph 20 of the Complaint seems to be missing an allegation that the New Boston Development was *funded* by a "series of loans from federally insured lending institutions and private investors and/or lenders based in part on 'replacement cost' or 'construction cost' appraisals (as opposed to comparable sales based appraisals) . . . ."

On March 13, 2017, TD Bank issued a check for $25,000, which was made payable to FLO and allegedly referenced Mr. Atkisson, and which purported to be for the purchase of the Debtor's Ford F-350 and Mercedes Benz E-350 (Complaint ¶¶ 23, 175). The check contained a handwritten, undated and unsigned note stating, "Balance Vehicle Purchase 2013 F-350 Truck and 2006 E-350 Benz" and "Money from Ray" (Complaint ¶ 175).

At some point in April of 2017, Newtek wired $241,000 (the "Newtek Loan Proceeds") into FLO's bank account at Merrimack Valley Federal Credit Union ("Merrimack Federal") (Complaint ¶ 24), a federally insured depository institution (Complaint ¶ 25). The Debtor was the only person with signatory authority over FLO's account at Merrimack Federal. The account bears FLO's tax identification number and the Debtor's personal social security number (Complaint ¶ 94). The Debtor used the Merrimack Federal account to pay personal bills and expenses, including his personal credit card bills, cable bill, Amazon bill, and monthly mortgage payment (Complaint ¶ 95).

On May 1, 2017, Mrs. Foistner became the trustee of JFL via an amendment to JFL's Original Trust Declaration of 1998 (Complaint ¶ 12). On May 17, 2017, the Debtor withdrew $202,246.29 from FLO's Merrimack Federal account via a check made payable to himself, in his individual capacity and without any limitations or restrictions (Complaint ¶¶ 26, 97, 98).[7] The next day, the Debtor opened a bank account ending in "7561" at St. Mary's Bank in FLO's name (the "FLO St. Mary's Account") and deposited $202,246.29 into the FLO St. Mary's Account (Complaint ¶¶ 27; 99). The Debtor endorsed the check, signing his name as "Joseph Foistner" (Complaint ¶ 27). By depositing the check into the FLO St. Mary's Account, the Debtor allegedly made a pre-petition transfer in the amount of $202,206 to FLO (which the Trustee

---

[7] According to the Complaint, the Debtor paid himself $202,246.00 of the $370,190.00 owed to him by FLO (Complaint ¶ 97).

contends is one of the Debtor's alter egos) (Complaint ¶ 100),[8] as part of a plan to divert some, but not all, of the Newtek Loan Proceeds to Mr. Atkisson, Mrs. Foistner, and JFL to benefit himself and Mrs. Foistner, and to further the New Boston Development scheme (Complaint ¶ 78).

The Debtor caused FLO to hold an "emergency" shareholder meeting on May 24, 2017 (the "Emergency Meeting") for FLO, at which various non-voting participants (including Mr. Atkisson and Ms. Prive) were present (Complaint ¶ 58). According to the Complaint, the non-voting participants encouraged or accepted parts of a concealment scheme outlined during the Emergency Meeting (the "Concealment Scheme") (Complaint ¶ 59),[9] and FLO acknowledged its own insolvency (Complaint ¶ 174). As a result of the meeting, the Debtor, Red River, and FLO would initiate civil lawsuits against various individuals, judges, and state entities (Complaint ¶ 59). The resolutions from the meeting also referenced a "$225 million dollar criminal and RICO Lawsuit" (Complaint ¶ 59).

The Debtor filed Articles of Voluntary Dissolution to dissolve FLO on May 24, 2017,[10] which were effective on May 30, 2017 (Complaint ¶ 33). At the time of FLO's dissolution, both the address of the registered agent and the location of FLO's principal office was "300 Brickstone Square, Suite 201, Andover, MA 01810 USA."[11] Prior to FLO's dissolution, the

---

[8] The Complaint alleges that the Debtor had an interest in the $202,206 and was insolvent on the date of the transfer and used the "tax returns" filed by the Debtor and FLO "to give others a false picture of the nature and extent of assets" (Complaint ¶ 101).

[9] The Complaint does not offer any factual allegations regarding what the non-voting participants did during the meeting to support their alleged encouragement or acceptance of the "concealment scheme."

[10] The Court takes judicial notice of FLO's Articles of Voluntary Dissolution, which appear in the Massachusetts Corporate Database. See In re Ramos, 2020 WL 5240382, at *2 n.6 (taking judicial notice of a limited liability company's corporate filings in the Massachusetts Corporate Database and corporate address contained therein).

[11] See Declaration in Lieu of Testimony Regarding Business Entity Summaries from [Massachusetts Secretary of State] of Beth E. Venuti (Doc. No. 229-1) (the "First Venuti Declaration"), Business Entity Summary for the Law Offices of Joseph A. Foistner, Esquire & Affiliates, P.C ("Exhibit BV1").

Debtor worked at FLO's Boston law office, which was little more than a post office box with a shared conference room, and which had no other employees (except for Mrs. Foistner) (Complaint ¶ 57).  FLO had few clients other than persons or entities owned, controlled, or managed by the Debtor (Complaint ¶ 57).

On May 25, 2017, the Debtor transferred his Mercedes Benz to Mr. Atkisson for the sum of $9,238.78 (the "Mercedes Benz Transfer") (Complaint ¶¶ 28, 29).[12]  The same day, the Debtor withdrew $201,000 from the FLO St. Mary's Account (Complaint ¶¶ 30, 119) and opened a St. Mary's bank account ending in "9906" for JFL (the "JFL Account"), using his name and social security number, as well as the name and social security number of Mrs. Foistner (Complaint ¶¶ 31, 120).  Mrs. Foistner was also a trustee and beneficiary of JFL (Complaint ¶ 9).  The Debtor and Mrs. Foistner held the powers of application and withdrawal over the $201,000 in the JFL Account at all material times (Complaint ¶ 31).  The same day, the Debtor allegedly transferred the $201,000 from the FLO St. Mary's Account to the JFL Account by wire transfer, wire number 192720 (Complaint ¶¶ 32, 122).[13]  Neither the Debtor nor FLO was indebted to JFL on or before May 25, 2017 (Complaint ¶ 118).  After the transfer was completed, the Debtor closed the JFL Account (Complaint ¶ 123).[14]

---

[12] The Complaint also alleges that on May 25, 2019, the Debtor paid Merrimack Federal $9,238.78, allegedly in satisfaction of a lien on his 2006 Mercedes Benz E-350 (Complaint ¶ 28).

[13] The Court assumes, based on its construction of the Complaint and the allegations contained therein, that the Debtor opened the JFL Account on May 25, 2017, and that the alleged transfer of $201,000 from FLO to JFL occurred on the same day.  Compare Complaint ¶¶ 26-32 (alleging that the Debtor opened the FLO St. Mary's Account on May 18, 2017, and withdrew the $201,000 from the FLO St. Mary's Account on May 25, 2017, "the same day" the Debtor opened the JFL Account) with Complaint ¶ 113 (asserting that the transfer of $201,000 from FLO to the JFL Account occurred on May 18, 2017, which preceded the alleged opening of the JFL Account).  Here, whether the alleged transfer from FLO to JFL took place on May 25, 2017, or May 18, 2017, is not material as both dates are within three weeks of May 31, 2017.

[14] The Court notes that the Complaint states that the JFL Account was closed on June 26, 2017 (Complaint ¶¶ 37, 124), which contradicts the allegations contained in paragraph 121 of the Complaint (stating that "the debtor . . . exercised total and complete control over the [JFL Account] during its one-day existence.").

On or about May 25, 2017, JFL, while under the direction and control of the Debtor, transferred $210,000.00 to Mr. Atkisson (Complaint ¶ 141). Although both the Debtor and Mrs. Foistner always held the powers of application and withdrawal over the $201,000 while it was in the JFL Account (Complaint ¶ 31), the Debtor exercised total and complete dominion and control over the JFL Account during its one-day existence (Complaint ¶ 121).[15]

On May 29, 2017, the Debtor transferred his F-350 Truck to Mr. Atkisson (Complaint ¶¶ 176, 177). On May 30, 2017, the Debtor formed American Corporate (Complaint ¶¶ 34, 80).[16]

B. The Bankruptcy Case and Post-Petition Events

At 11:46 a.m. on May 31, 2017 (the "Petition Date"), the Debtor paid off Merrimack Federal's lien on his 2013 Ford F-350 pick-up truck (Complaint ¶ 35). Later that day, at 4:04 p.m. (according to the Court's docket), the Debtor filed a chapter 7 petition in the District of New Hampshire (Bk. No. 17-10796, Doc. No. 1) (the "Petition"). In the Petition, the Debtor listed 104 Foxberry Dr., New Boston, New Hampshire 03070 as his physical address and PO Box 240, New Boston, NH 03070 as his mailing address. The Debtor's Statement of Financial Affairs did not list the Debtor's interest in JFL or other business entities, nor did it disclose any income from FLO during the period of January of 2017 through May of 2017 (Complaint ¶¶ 44, 93). Rather, the Statement of Financial Affairs indicated that FLO owed him $370,190.00, which "remained in his 'accounts receivable'" (Complaint ¶ 93).

---

[15] Portions of the Complaint appear to conflate the JFL Account with the FLO St. Mary's Account. Paragraph 123 of the Complaint states that "immediately after the [Debtor] completed the $201,000 transfer to [JFL] from the [FLO St. Mary's Account], the [Debtor] closed the FLO St. Mary's Account." Complaint at ¶ 123. Paragraph 124 of the Complaint states that the JFL Account was closed on June 26, 2017, which contradicts paragraph 121 (referencing the JFL Account's one-day existence). See Complaint at ¶ 121. Because the FLO St. Mary's Account was allegedly opened on May 18, 2018 (Complaint ¶ 26), and in light of the other allegations regarding JFL and the JFL Account, the Court construes the Complaint as alleging that the Debtor immediately closed the JFL Account one-day after he opened the account and that the FLO St. Mary's Account was closed on June 26, 2017.

[16] But see First Venuti Declaration, Business Entity Summary for American Corporate Tax Attorneys and Tax Accountants, P.C. ("Exhibit BV2") (showing American Corporate's date of organization as being June 5, 2017).

On June 1, 2017, Mr. Atkisson and American Corporate became co-trustees of JFL (Complaint ¶ 12).  Mrs. Foistner and Mr. Atkisson are beneficiaries of JFL.  Mrs. Foistner has a 60% interest in JFL while living, while Mr. Atkisson has a 40% interest while living (Complaint ¶ 12).  Upon Mrs. Foistner's death, Ms. Prive becomes the 60% beneficiary of JFL (Complaint ¶ 12).

On June 5, 2017, the Debtor filed Articles of Organization with the Secretary of the Commonwealth of Massachusetts, Corporations Division to incorporate American Corporate.[17] Like FLO's Articles of Organization, American Corporate's Articles of Organization named the Debtor as the president, treasurer, clerk, director, sole shareholder, and registered agent.  The Articles of Organization listed "100 Oliver St., STE 1400, Boston, MA 02110" as the initial registered principal office of American Corporate, "Joseph A Foistner ESQ., 240 Mont Vernon Road, New Boston, NH 03070" as the name of American Corporate's initial registered agent at its registered office, and "240 Mont Vernon Road, New Boston, NH 03070" as the address of American Corporate's officers and directors.

On June 26, 2017, [18] the Debtor closed the FLO St. Mary's Account (Complaint ¶¶ 37, 124) and formed DCMV (Complaint ¶¶ 13, 36).  DCMV has an address of either 240 Mont Vernon Road, New Boston, New Hampshire (Complaint ¶ 164) or 100 Oliver Street, Suite 1400, Boston, MA 02110.[19]  Mrs. Foistner is the trustee and sole beneficiary of DCMV while living

---

[17] Although paragraph 34 of the Complaint states that the Debtor formed American Corporate on May 30, 2017, the Business Entity Summary for DCMV for American Corporate (and its Articles of Organization, which the Court may take judicial notice of) indicate that American Corporate's effective date of organization was June 5, 2017.  See First Venuti Declaration, Exhibit BV2.  Moreover, Article VII of American Corporate's Articles of Organization states that the effective date of organization of a corporation is the date and time the articles were received for filing if the articles are not rejected within the time prescribed by law.

[18] See Footnote 15.

[19] The Court notes that paragraphs 13 and 164 of the Complaint provide alternative addresses for DCMV.  Compare Complaint ¶ 13 (stating that DCMV "is a trust with its principal place of business at and a mailing address of 100 Oliver Street, Suite 1400, Boston, MA 02110") with Complaint ¶ 164 (stating that DCMV "is a trust with an address of 240 Mont Vernon Road, New Boston, New Hampshire.").

(Complaint ¶ 13).  Prior to April 21, 2022, Ms. Prive was the sole beneficiary of DCMV upon Mrs. Foistner's death (Notice; Complaint ¶ 13).

In early August of 2017, the Debtor amended his Statement of Financial Affairs and Bankruptcy Schedules (Bankruptcy Case, Doc. Nos. 35-1 and 38; Complaint ¶ 45).

On August 18, 2017, American Corporate transferred $20,000 to DCMV by check number 0101 (Complaint ¶¶ 38, 166).  The same day, Mrs. Foistner, in her capacity as the trustee of DCMV, purchased property located at "2 Daland Circle, Mont Vernon, New Hampshire" (the "Daland Property") (Complaint ¶ 39).

Then, on August 29, 2017, the Debtor testified at his § 341 Meeting of Creditors (Complaint ¶ 46).  According to the Trustee, the Debtor's testimony was convoluted and raised questions regarding his income, assets, and transfers of funds and property, including the Newtek Loan Proceeds (Complaint ¶ 46).  As a result, the UST sought and received authority to conduct a Bankruptcy Rule 2004 examination of the Debtor, which eventually occurred on March 1, 2018 (Complaint ¶¶ 47-48).

In early September of 2017, the Debtor's attorney (who subsequently withdrew from the case) filed a Notice of Address Change on behalf of the Debtor (Bankruptcy Case, Doc. No. 53), updating the Debtor's address to "240 Mont Vernon Road Route 13, New Boston NH 03070." On September 5, 2017, American Corporate transferred another $16,000 to DCMV by check number 0102 (Complaint ¶¶ 40, 167).

At some point in September of 2017, the Debtor transferred title to the F-350 Truck to himself and Mrs. Foistner (Complaint ¶ 41).  Subsequently, Mrs. Foistner obtained a loan against the F-350 Truck from St. Mary's Bank, which the Trustee alleges establishes that there was equity in the vehicle at that time (Complaint ¶ 42).  In April of 2018, Mrs. Foistner sold the F-350 Truck to AutoFair Ford (Complaint ¶ 43).

C.   The Adversary Proceeding

On May 29, 2019, the Trustee commenced this adversary proceeding, alleging in part that the Debtor, Mrs. Foistner, and other individual defendants used the Corporate Defendants and Trust Defendants to effectuate the New Boston Development, which the Trustee characterizes as a complex scheme designed to defraud various individuals and/or other lenders of funds (Doc. No. 1) (the "Complaint").  The Trustee did not attach any supporting exhibits to the Complaint. The Court issued the Summons the same day pursuant to Local Bankruptcy Rule ("LBR") 7004-2 (Doc. No. 3).  On May 31, 2019, the Trustee's Counsel filed a Return of Service (Doc. No. 6) (the "Return of Service").  The Return of Service indicates service on the Debtor, Mrs. Foistner, and the Corporate and Trust Defendants by "First Class United States Mail, postage fully pre-paid . . . and by Certified Mail-Return Receipt Requested."  Both the Debtor and Mrs. Foistner were served in their individual capacities at 240 Mont Vernon Rd., Route 13, New Boston, New Hampshire 03070.  The Corporate Defendants and Trust Defendants were served in their respective names only at 100 Oliver St., Suite 1400, Boston, Massachusetts 02110.  See Return of Service at 3.  The Return of Service does not indicate service on the Debtor, Mrs. Foistner, Ms. Prive, Mr. Atkisson, or American Corporate in their respective capacities as trustee and/or beneficiary of any of the Trust Defendants.  At the time of service, American Corporate was an active corporation in Massachusetts.

On June 24, 2019, the Defendants filed the Motion and Memorandum of Law in Support of the Motion (Doc. No. 10-1) (the "Memorandum") jointly and apparently on behalf of the Corporate and Trust Defendants.  The Defendants signed page 25 of the Memorandum, which lists the request for relief and the certificate of service.  Although the names of the Corporate Defendants and Trust Defendants appear below the Defendants' names, as if they were among the moving parties, no attorney has appeared on behalf of the Corporate Defendants or the Trust

11

Defendants in this proceeding or the Debtor's Bankruptcy Case as required by LBR 9011-2.[20] Four days later, American Corporate was dissolved by either court order or by the Secretary of the Commonwealth of Massachusetts.[21]  At the time of its dissolution, American Corporate had failed to file any annual reports or other documents.

On July 3, 2019, the Trustee and the Debtor filed a joint motion requesting the entry of a stipulated order staying this adversary proceeding due to the Debtor's then-pending criminal proceeding (Doc. No. 12).  After a hearing held on August 7, 2019, the Court entered the stipulated order, staying the adversary proceeding in light of Fifth Amendment considerations raised by the Debtor (Doc. No. 18) (the "Stay Order").  While the Stay Order permitted the Trustee to address any service issues, it did not require the Trustee to do so by a certain deadline, and the Trustee has not done so to date.  Following the entry of the Stay Order, the Court held various status conferences and ordered the parties to file status reports to monitor the continued necessity of the stay.

The Court held a status hearing on June 24, 2020.  During the hearing, the Court ordered the Debtor and the other named defendants to file a notice of their respective current addresses on or before July 1, 2020 (Doc. No. 27).  On July 1, 2020, the Debtor filed a Notice of Current Addresses (Doc. No. 29) (the "2020 Notice of Addresses").  The 2020 Notice of Addresses listed "2 Daland Circle, Mont Vernon, NH 03057" as the address for the Debtor, Mrs. Foistner, and the Trust Defendants.  The 2020 Notice of Addresses did not provide an address for either of the Corporate Defendants.  Rather, it stated that neither FLO nor American Corporate had an address because they were "dissolved" in 2017 and 2019, respectively.  On July 6, 2020, the Court issued

---

[20] LBR 9011-2 provides in relevant part that "corporations, trusts, limited liability companies and unincorporated associations may not appear *pro se*."

[21] See First Venuti Declaration, Exhibit BV2.

a notice to all creditors and parties in interest regarding the 2020 Notice of Addresses (Doc. No. 30).

The criminal proceeding resulted in the Debtor's conviction on several counts of bank fraud, wire fraud, and bankruptcy fraud on December 23, 2021.  After a series of continuances, the Court held a status conference in late April of 2022.  At its conclusion, the Court ordered the Trustee to file and serve on the Defendants a proposed scheduling order and scheduled the matter for a continued pre-trial conference on June 22, 2022.[22]  On May 2, 2022, the Trustee filed a Motion to Approve Proposed Scheduling Order (Doc. No. 66), stating that the Debtor had informed the Trustee of his intention to object to the scheduling order on the basis that the Motion had to be ruled upon first.  The Defendants filed an objection to the Motion to Approve Proposed Scheduling Order on May 6, 2022 (Doc. No. 67) (the "Scheduling Order Objection") and a Motion to Receive Leave of Court to Sue the Trustee and other individuals (Doc. No. 66) (the "Motion to Sue").

During the June 22 continued pre-trial conference, the Court dissolved the Stay Order and addressed the scheduling of the Motion and the Motion to Sue for hearing.  In response, the Debtor informed the Court that he would be available and able to fully participate in the proceeding despite his imminent incarceration.[23]  With the Debtor's agreement, the Court

---

[22] The Court notes that it gave this order on the record during the hearing and, while not reflected on the docket, is verifiable via the Court's official audio recording system, a transcript of which may be requested.

[23] Despite the Debtor's insistence that he desires to litigate this matter, the Debtor has filed various motions seeking to prevent or delay the adjudication of this matter.  On July 6, 2022, the Debtor filed a Non-Assented to Emergency Expedited Motion to Stay the proceeding and the Bankruptcy Case for four years (Doc. No. 84) (the "Motion to Stay"), which was scheduled for hearing on July 20, 2022 (Doc. No. 89).  Less than a week later, the Debtor filed a Non-Assented to Emergency Expedited Motion for Continuance (Doc. No. 99), appearing to seek a 60-day continuance of the July 11 hearing on the Motion, the July 20 hearing on the Motion to Stay, the August 19 hearings on the Motion to Sue, and the Trustee's Motions to Approve Settlements (Doc. Nos. 78 and 80).  The Trustee objected to both the stay of the proceeding (Doc. No. 101) and the continuance of the hearings (Doc. No. 102) and moved to strike the Motion to Sue (Doc. No. 68).

scheduled the Motion for a telephonic hearing on July 20, 2022, and ordered the Trustee to file a response to the Motion by July 11, 2022 (Doc. No. 73).

On July 6, 2022, the Trustee filed his Objection and First Supplemental Objection.  In late December of 2022, with leave from the Court, the Trustee filed his Second Supplemental Objection.  In support of the Second Supplemental Objection, the Trustee filed the First Venuti Declaration[24] and a Declaration in Lieu of Testimony Regarding Ownership, Management and Organization of Foistner Corporations and Trusts (Doc. No. 234) (the "Second Venuti Declaration") (collectively, the "Venuti Declarations").[25]  The exhibits (or sub-exhibits) to both of the Venuti Declarations contain publicly available information and mirror the relevant factual allegations of the Complaint, and the Court may properly consider them in the context of the Motion.

## IV.    Applicable Law & Analysis

A.   Dismissal Under Rule 12(b)(4) and (b)(5) for Insufficient Service and Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).  "'Personal jurisdiction is established either by proper service of process or by the defendant's waiver of any defect in the service of process.'"  In re

---

[24] According to the First Venuti Declaration, Ms. Venuti searched the online database of the Massachusetts Corporations Division on October 16, 2018, at which time she found the corporation named "Law Offices of Joseph A. Foistner, Esquire & Affiliates, P.C."

[25] The Trustee attached the following documents as exhibits to the Second Venuti Declaration: (i) Exhibit BV1, which includes the Declaration of Revocable Nominee Trust of JFL (Doc. No. 234 at 8-12), Amended Schedule of Beneficial Interests for JFL (Doc. No. 234 at 13), and Appointment of Corporation The American Tax Attorneys & Tax Accountant P.C. as Co-Trustee of JFL (Doc. No. 234 at 14); (ii) Exhibit BV2, which includes the Declaration of DCMV (Doc. No. 234 at 16-19) and the Schedule of Beneficial Interests of DCMV (Doc. No. 234 at 20); and (iii) Exhibit BV3, which includes the Revocable Nominee Trust of Red River (Doc. No. 234 at 21-24) and the Schedule of Beneficial Interests for Red River (Doc. No. 234 at 25).

Ramos, 2020 WL 5240382, at *3 (quoting Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 23 (1st Cir. 1992) (citations omitted)).  See also Fed. R. Bankr. P. 7004(f).  A defendant may challenge the sufficiency of process and service of process pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(4) and (b)(5), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b).  See Fed. R. Civ. P. 12(b)(4)-(5); Fed. R. Bankr. P. 7012(b).  See also Narvaez Velez v. Bellver Espinoza Law Firm (In re Narvaez Velez), Adv. Pro. No. 20-00054-ESL, 2021 WL 2069925, at *4 (Bankr. D.P.R. May 21, 2021).  A motion challenging the sufficiency of or service of process "'must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized.'"  In re Narvaez Velez, 2021 WL 2069925, at *4 (quoting O'Brien v. R.J. O'Brien Assocs., 998 F.2d 1394, 1400 (7th Cir. 1993)).  As the movants, the Defendants carry the burden of proving insufficient process.  See id.

Rule 4, made applicable to this proceeding by Bankruptcy Rule 7004, governs the issuance and service of a summons.  See Fed. R. Civ. P. 4; Fed. R. Bankr. P. 7004.  Bankruptcy Rule 7004 allows a plaintiff to serve the summons and complaint on a defendant by personal service or within the United States by first class mail postage prepaid.  See In re Narvaez Velez, 2021 WL 2069925, at *3.  The Court must examine subsections (b)(1), (b)(3), and (b)(9) to determine whether the Trustee served the Defendants and the Corporate and Trust Defendants in accordance with Bankruptcy Rule 7004.  See Fed. R. Bankr. P. 7004(b)(1) (service on an individual), (b)(3) (service on a corporate entity), and (b)(9) (service on a debtor).

*i.*   Service on Mrs. Foistner, Individually

The Defendants contend only that Mrs. Foistner never received the Complaint.  Mrs. Foistner did not file an affidavit or offer any other evidence supporting the one-line contention that she did not receive the Complaint and Summons.  The Trustee objects, stating that Mrs.

Foistner's one-line denial alone is insufficient to rebut the Return of Service's prima facie evidence that the Complaint and Summons were properly mailed and therefore, served.[26]  In support, he states that an executed Return of Service is prima facie evidence of valid service, which can only be overcome by a showing of strong and convincing evidence.

        a.  Analysis

      Bankruptcy Rule 7004(b)(1) governs service on individual defendants and permits service "by mailing a copy of the summons and complaint to the individuals dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession."  Fed. R. Bankr. P. 7004(b)(1).  For service to be sufficient, "[t]here must be a reasonable nexus between the defendant and the place where service is effected."  Tropin v. Weitsman (In re Premium Sales Corp.), 182 B.R. 349, 351 (Bankr. S.D. Fla. 1995) (citing In re Deboul, 82 B.R. 657 (Bankr D. Mass 1987)).  "The analysis is fact driven.  Consideration is given to the fact that 'in a highly mobile and affluent society, it is unrealistic to interpret [the Bankruptcy Rule] so that the person to be served has only one dwelling house or usual place of abode at which process may be left.'"  Id. (quoting Nat'l D. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d Cir.1991) (citing 4A C. Wright & A. Miller, Federal Practice and Procedure § 1096 at 73 (2d ed. 1987))).  See also Garcia v. Cantu, 363 B.R. 503, 513 (Bankr. W.D. Tex. 2006) ("[F]or purposes of Bankruptcy Rule 7004(b), a place shown by a plaintiff to have once been a valid 'dwelling house or usual place of abode' does not cease to be a valid address for mailing of service unless the party contesting service establishes by evidence that he has in fact abandoned that address.")

---

[26] Although paragraph 31 of the Second Supplemental Objection states that "Defendant Laurie Foistner does not even allege that she did not receive the Summons and Complaint," that is not accurate.  The Memorandum filed in support of the Motion includes the following one-line assertions addressing service on Mrs. Foistner: "Defendant Laurie Foistner was never served by mail" and "Defendant Laurie Foistner was never served."

Importantly, "[t]here is no requirement that the summons and complaint actually be received." Flores v. Safadi (In re Safadi), 431 B.R. 478, 481 (Bankr. D. Ariz. 2010). See also In re Narvaez Velez, 2021 WL 2069925, at *3 (same). "It is well established that 'proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.'" In re Butts, No. 06-4594, 2007 WL 1722805, at *3 (E.D. Pa. June 13, 2007) (quoting Hagner v. United States, 285 U.S. 427, 430 (1932)). See also In re Bodnar, No. 98-MC-95, 1998 U.S. Dist. LEXIS 12597, at *20 (E.D. Pa. Aug. 13, 1998) ("If mail is properly addressed, stamped and deposited in the postal system, a rebuttable presumption arises that the notice was received by the addressee."). "The mailbox rule presumption is not nullified solely by testimony denying the receipt of the item mailed." In re Butts, 2007 WL 1722805, at *3 (citing Freeman v. City of Philadelphia, No. 90-2356, 1994 U.S. Dist. LEXIS 9858, at *4 (E.D. Pa. July 21, 1994)). See also In re Premium Sales Corp., 182 B.R. at 351 ("[A]n executed Return of Service is prima facie evidence of valid service and can only be overcome by strong and convincing evidence."). Indeed, "[t]he mere denial of receipt [of service] by the party being served is insufficient to rebut [prima facie evidence of proper service]." Garcia, 363 B.R. at 510 (determining that "[b]ecause [p]etitioning [c]reditors [in an involuntary chapter 11 case] filed proof of mailing, and because the [d]ebtor [did] not present[] any controverting evidence, the [p]etitioning [c]reditors . . . carried their burden as to the issue of mailing by a preponderance of the evidence.")

The Court finds that the Trustee sufficiently served Mrs. Foistner in compliance with Bankruptcy Rule 7004(b)(1). Here, the executed Return of Service creates a presumption of sufficient service on Mrs. Foistner at what appears to have been the Debtor and Mrs. Foistner's shared dwelling, or the place where she regularly conducts a business or profession, as of June of 2017. This conclusion is further supported by DCMV's trust documents submitted with the

17

Second Venuti Declaration.[27]  Although Mrs. Foistner's address was updated in July of 2020 in compliance with the Court's order, the subsequent address change alone is not sufficient to overcome the presumption of sufficient service established by the executed Return of Service. Moreover, Mrs. Foistner has not provided the Court with an affidavit supporting any alternative address as her home, dwelling, or place where she regularly conducted business at the time of service.  Nor has she otherwise supported the Motion's bare assertion that she never received the Complaint and Summons.  Indeed, the Motion is devoid of any information to rebut the presumption of sufficient service as to Mrs. Foistner.  Accordingly, the Court finds that the Trustee properly served Mrs. Foistner, in her individual capacity only, in accordance with Bankruptcy Rule 7004(b)(1).

> ii.  Service on the Debtor, Individually

The Debtor asserts that service was insufficient because he received the Complaint and Summons "by regular mail, left in a Mail Box . . . on or about 8 June 2019."  Citing that language in the Motion and the Return of Service, which reflects service on the Debtor by "Regular, first class United States mail, postage fully pre-paid," the Trustee contends (and believes the Debtor admitted) that service was sufficient under Bankruptcy Rule 7004(b)(1).

> a.  Analysis

Bankruptcy Rule 7004(b)(9) governs service of the Complaint and Summons on the Debtor and permits service made by first class mail postage prepaid, "after a petition has been filed by . . . the debtor and until the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or to such other

---

[27] Specifically, the Declaration of DCMV and the Schedule of Beneficial Interests of DCMV.  See Second Venuti Declaration, Exhibit BV2.  According to those documents, Mrs. Foistner was both a trustee and beneficiary of DCMV.  The documents list her mailing address as "240 Mont Vernon, Road, of Hillsborough County, State of New Hampshire 03070."

address as the debtor may designate in a filed writing."  Fed. R. Bankr. P. 7004(b)(9).  The

Trustee properly served the Debtor pursuant to Bankruptcy Rule 7004(b)(9) by mail at 240 Mont

Vernon Rd., Route 13, New Boston, New Hampshire 03070, which is the address the Debtor's

then-attorney designated in writing in early September of 2017.  See Bankruptcy Case, Doc. No.

53; Return of Service at 3.  Furthermore, the Debtor admitted that he received the Complaint and

Summons in a "mailbox."  Based on this admission and the executed Return of Service, which

creates a presumption of sufficient service, the Court concludes that the Trustee served the

Debtor in compliance with Bankruptcy Rule 7004(b)(9).[28]

>    iii.   Service on the Corporate Defendants

The Defendants allege that the Corporate Defendants did not receive sufficient service of

process because their respective Keeper of Records never received the Complaint and Summons.

Conversely, the Trustee maintains that the Corporate Defendants received adequate notice and

sufficient service as required by Bankruptcy Rule 7004 because he mailed the Summons and

Complaint to their respective addresses and served the Debtor, who was the registered agent, sole

director, and shareholder of FLO and American Corporate.  In support, the Trustee cites the First

Venuti Declaration and the attached business entity summaries as an offer of proof supporting

the Debtor's status as an officer and the registered agent of the Corporate Defendants on their

respective dates of dissolution.  See First Venuti Declaration, Exhibits BV1 and BV2.  The

Trustee further contends that he has the right to waive service and any service issue relating to

---

[28] Although the Court can end its analysis here, this conclusion is further corroborated by Mr. Atkisson's
Declaration in Lieu of Testimony Regarding Certain Allegations Made in Defendant's Motion to Dismiss the
Plaintiff's Complaint (Doc. No. 227-1, Exhibit A) (the "Atkisson Declaration"), of which this Court may take
judicial notice.  In the Atkisson Declaration, Mr. Atkisson states that "[the Debtor] was [his] attorney at the time he
stated that receiving [the Summons and Complaint] in the mail was not legal or considered served.  [The Debtor]
stated he was filing a motion to dismiss because we were not served legally and the judge would have to dismiss."
Atkisson Declaration at 2.  According to the Atkisson Declaration, the Motion's statement that the Complaint "was
never received" by Mr. Atkisson was false and that Mr. Atkisson never told the Debtor that he never received the
Complaint.  Like the Debtor, Mr. Atkisson was served by mail at his home, which is sufficient.

the Corporate Defendants because their stock constitutes property of the estate. The Trustee reasons that because the Debtor was the sole equity owner of FLO on the Petition Date, which he alleges became American Corporate by a *de facto* merger, the Debtor's ownership interest in the Corporate Defendants became property of the estate. In the alternative, the Trustee asserts that the Motion should be stricken to the extent it purports to have been filed on behalf of the Corporate Defendants (and Trust Defendants) in violation of LBR 9011-2.

Because the Defendants are not attorneys in good standing admitted to practice law before this Court, they may not prosecute the Motion and the arguments contained therein on behalf of the Corporate Defendants. See LBR 9011-2.[29] To date, neither of the Corporate Defendants have filed a proper appearance or otherwise responded to the Complaint, which may support a finding of default and entry of default judgment against them. Nevertheless, absent a finding of sufficient service or waiver thereof, the Court lacks personal jurisdiction over the Corporate Defendants. Consequently, the Court must determine whether service on the Debtor, in his individual capacity, and/or service on the Corporate Defendants was sufficient to establish the Court's jurisdiction over the Corporate Defendants.

  a. Analysis

Bankruptcy Rule 7004(b)(3) addresses service on corporations and other corporate forms, permitting service by first class mail:

> by mailing a copy of the summons and complaint *to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law* to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

---

[29] Pursuant to LBR 9011-2 "[a] *pro se* party may not authorize another person who is not a member of the bar of the United States District Court for the District of New Hampshire to appear on his or her behalf. This includes a spouse or relative and any other party on the same side who is not represented by an attorney. In accordance with LR 83.6(c), corporations, trusts, limited liability companies and unincorporated associations may not appear pro se."

Fed. R. Bankr. P. 7004(b)(3) (emphasis added).

"The requirement to direct the mailing to the attention of 'an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization.'" Savage & Assocs., P.C. v. 1201 Owner Corp. (In re Teligent, Inc.), 485 B.R. 62, 68-69 (Bankr. S.D.N.Y. 2013) (quoting Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP), Adv. No. 10-5456 (SMB), 2011 WL 3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011)); accord Green Tree Fin. Serv. Corp. v. Karbel (In re Karbel), 220 B.R. 108, 113 (B.A.P. 10th Cir. 1998); cf. Fed. R. Civ. P. 4 advisory committee's note (1993) (discussing request for waiver of service of process). "By permitting service by first class mail without requiring an acknowledgment of receipt of service, [Bankruptcy] Rule 7004 significantly abbreviates the procedures set forth in the [Rules]." In re Karbel, 220 B.R. at 112 (quoting Braden v. Gen. Motors Acceptance Corp. (In re Braden), 142 B.R. 317, 319 (Bankr. E.D. Ark. 1992)). "Because of this abbreviated notice procedure, it is important that correct notice is provided in accordance with the rules." Id. Thus, if a plaintiff elects to serve a corporation "by mail, then the summons and complaint must be mailed 'to the attention of an officer, a managing or general agent . . . .'" Maloni v. Fairway Wholesale Corp. (In re Maloni), 282 B.R. 727, 731 (B.A.P. 1st Cir. 2002) (quoting Fed. R. Bankr. P. 7004(b)(3)). See also In re Narvaez Velez, 2021 WL 2069925, at *4 n.1 (noting that even if the named law office was a corporation as opposed to a "d/b/a," "service [would have been] defective as it was not addressed to the attention of an officer, a managing or general agent, or to an agent authorized or appointed by law, as required by [Bankruptcy Rule] 7004(b)(3)").

"Failure to effect service as provided by Rule 7004(b)(3) will render service of process insufficient, and will deprive the bankruptcy court of personal jurisdiction over the defendant

21

corporation." In re Maloni, 282 B.R. at 731.  See also Sun Healthcare Grp., Inc. v. Mead

Johnson Nutritional (In re Sun Healthcare Grp., Inc.), Adv. Proc. No. 01-7671 and 01-7480

(MFW), 2004 Bankr. LEXIS 572, at *18-19 (Bankr. D. Del. Apr. 30, 2004) (finding that

"[f]ailure to address service of process to the attention of an officer or agent of [the corporate

defendant] violate[d] the statutory requirements of Bankruptcy Rule 7004(b)(3).") (citing In re

Golden Books Family Entm't, Inc., 269 B.R. 300, 305 (Bankr. D. Del. 2001) (determining that

notice documents in a contested matter, which must be served in the same manner provided for

service of a summons and complaint under Bankruptcy Rule 7004, were deficient because

"among other things, [the debtors] failed to address any of the copies of the notice to a person of

authority or to a person authorized to accept service"))).

        To determine whether service was sufficient under Bankruptcy Rule 7004(b)(3), the

Court must examine the relevant state law governing professional corporations like FLO and

American Corporate.

        In Massachusetts, professional corporations are primarily governed by the Professional

Corporation Law.  See Mass. Gen. Laws. c. 156A, § 1.  This statute requires professional

corporations to observe certain formalities and reporting requirements, including filing annual

reports.  See Mass. Gen. Laws. c. 156A, § 18.  Additionally, the Massachusetts Business

Corporation Act, which is codified in Chapter 156D of the Massachusetts General Laws,

provides duly formed professional corporations with the powers and privileges of corporations

while also subjecting them to the duties, restrictions, and liabilities of corporations, to the extent

the two laws are consistent.  See Mass. Gen. Laws. c. 156A, § 4.  See also Mass. Gen. Laws. c.

156D, §§ 1-17.04.  See also Mass. Gen. Laws. c. 156B, § 3 (making provisions contained in

chapter 156B applicable to professional corporations to the extent they are consistent).  In

Massachusetts, a corporation must "continuously maintain in the commonwealth: (1) a registered

office . . .  and (2) a registered agent . . . whose business office is also the registered office of the corporation."  Mass. Gen. Laws. c. 156D, § 5.01.  "A corporation's registered agent is the corporation's agent for service of process, notice, or demand required by law to be served on the corporation."  Mass. Gen. Laws. c. 156D, § 5.04(a).  Under Massachusetts law, "[s]ervice on a corporation shall be effected and shall be perfected in accordance with the Massachusetts Rules of Civil Procedure and applicable provisions of [Massachusetts] General Laws."  Mass. Gen. Laws. c. 156D, § 5.04(b).

A Massachusetts corporation is "dissolved upon the effective date of its articles of dissolution."  Mass. Gen. Laws. c. 156D, § 14.03.  However, the Secretary of the Commonwealth may administratively dissolve a professional corporation based on the failure to file annual reports or observe other formalities.  See Mass. Gen. Laws. c. 156A, § 15; Mass. Gen. Laws. c. 156D, § 14.21(b).  Under Massachusetts law, "[a] dissolved corporation continues its corporate existence but may not carry on any business except such as is necessary in connection with winding up and liquidating its business and affairs . . . ."  See Mass. Gen. Laws. c. 156D, § 14.05(a) (stating the effect of dissolution).  See also Mass. Gen. Laws. c. 156D, § 14.21(d) (explaining that a corporation that is "administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs . . . .").  Importantly, dissolution does not "transfer title to the corporation's property; . . .  prevent transfer of its shares or securities . . . prevent commencement of a proceeding by or against the corporation in its corporate name; . . . or terminate the authority of the registered agent of the corporation."  Mass. Gen. Laws. c. 156D at § 14.05(b).

### (1) FLO

The Trustee did not serve FLO in compliance with Bankruptcy Rule 7004(b)(3).  Notwithstanding the Trustee's contention that he has the authority to waive service because FLO

was dissolved pre-petition, he has not provided any case law or other statutory basis to support that assertion. Indeed, the Trustee's argument, though appealing, is undermined by applicable Massachusetts law on corporations. Despite its dissolution, which was effective on May 30, 2017, FLO continued to be a separate corporate entity, just as the Debtor continued to be its registered agent. See Mass. Gen. Laws. c. 156D, § 14.05(a) (stating the effect of dissolution); Mass. Gen. Laws. c. 156D, § 14.05(b). At the time of FLO's dissolution, both the address of the registered agent and the location of FLO's principal office was "300 Brickstone Square, Suite 201, Andover, MA 01810 USA." The Return of Service indicates service on FLO in its name only at "100 Oliver St., STE 1400, Boston, MA 02110." Accordingly, service was insufficient for having been directed to the incorrect address and not having been sent to the attention of the Debtor, FLO's registered agent (i.e., an individual or entity authorized to receive service of process).

(2) American Corporate

Service on American Corporate was also insufficient. While the Trustee served American Corporate at "100 Oliver St., STE 1400, Boston, MA 02110," which was the address of the registered agent and the business itself, he did not address service to American Corporate in the care of the Debtor, by name or in his capacity as an officer or agent authorized to receive service of process on behalf of American Corporate. Thus, "[t]o the extent that service was being attempted in accordance with [Bankruptcy] Rule 7004(b)(3), it was insufficient because it was not addressed "*to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.*'" In re Ramos, 2020 WL 5240382, at *2 (citing Fed. R. Bankr. P. 7004(b)(3)) (emphasis added).

24

(3) Service on the Debtor as Service on the Corporate Defendants

Moreover, service on the Debtor, individually, at "240 Mont Vernon Road, Route 13, New Boston, New Hampshire 03070" without any reference to the Corporate Defendants does not equate to service on FLO or American Corporate's registered agent.  First, by addressing service to the Debtor alone, there was no notice that the Corporate Defendants were being served process instead of, or in addition to the Debtor.  Second, the Debtor's individual service address, while appropriate under Bankruptcy Rule 7004(b)(9), is not the registered agent address listed on FLO's Statement of Change of Address filed on December 2, 2011, or in American Corporate's Articles of Organization or the Massachusetts Corporate Database.  See In re Ramos, 2020 WL 5240382, at *2 (finding service on corporate entity insufficient where second service address incorrectly stated the street number of the registered agent's current address).  At the time of service, the Debtor and the Corporate Defendants were and remain (until after a determination on the Trustee's alter ego theory and/or substantive consolidation is ripe for review) separate and distinct litigants, requiring service in compliance with the applicable subsection of Bankruptcy Rule 7004.

This conclusion recognizes both the importance of due process and the intended consequence of incorporation– to limit the liability of shareholders by creating a separate entity who may sue or be sued—and the principles of agency.  See Mass. Gen. Laws. c. 156A, § 6(b) (stating that the Professional Corporation Law "shall not alter any law applicable to the relationship between a person rendering professional services and a person receiving such services, including liability arising out of such professional services."); Mass. Gen. Laws. c. 156D, § 6.22(b) (discussing limited liability of shareholders and stating that "[u]nless otherwise provided in the articles of organization, a shareholder of a corporation shall not be personally

liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct.").

For the purposes of service and personal jurisdiction, the Debtor, in his individual capacity, cannot and should not be conflated with the Corporate Defendants' registered agents. While the Trustee contends that the Corporate Defendants are the alter ego of the Debtor, which if true may justify the employment of the equitable *remedy* of veil piercing and/or reverse veil piercing, such a determination cannot precede the threshold inquiries of this Court's personal jurisdiction over separate litigants and the sufficiency of service and due process on those litigants.

In short, conflating Bankruptcy Rule 7004(b)(9) and (b)(3)'s unique service requirements would prematurely disregard the significance of the corporate form in this proceeding.  As awkward as this conclusion may seem, the fact that the Debtor—the principal officer of the Corporate Defendants—received the very same Summons and Complaint in his individual capacity that the Trustee attempted to serve upon the Corporate Defendants does not, in this Court's judgment, justify disregarding the requirements for proper service upon the Corporate Defendants in accordance with the applicable Rules and Bankruptcy Rules.

       *iv.*  Service on the Trust Defendants

The Defendants assert that the Trust Defendants have not been served, but do not appear to make that argument in their capacities as trustees and/or beneficiaries of the Trust Defendants. The Trustee asserts that service on the Trust Defendants was sufficient because service on the Debtor, Mrs. Foistner, Ms. Prive and Mr. Atkisson in their individual capacities was sufficient.

       a.  Analysis

Service on the Trust Defendants and/or their respective beneficiaries and trustees in their individual capacities was insufficient.  Under Massachusetts law, a trust is not a legal person or

entity.  See Swenson v. Horgan, 341 Mass. 153, 154, 167 N.E.2d 743, 744 (1960); Larson v. Sylvester, 282 Mass. 352, 357, 185 N.E. 44, 45 (1933).  Generally, a trust may not sue or be sued, per se.  See Larson, 282 Mass. at 357-359, 185 N.E. at 45-46 (discussing general rule that trusts may not be sued and the exception thereto in relation to the trust at issue).[30]  Accordingly, it is the trustee (and possibly the beneficiaries) of a trust who has the capacity to either sue or be sued.

Here, the Trustee served the Trust Defendants at the same address used for service on the Corporate Defendants.  Neither the Debtor, American Corporate, Mrs. Foistner, nor Mr. Atkisson were served in their capacities as trustee and/or beneficiary.  To date, counsel has not appeared on behalf of any of the Trust Defendants and/or their trustees.  Accordingly, the Motion is denied without prejudice pending the Trustee perfecting service on the Debtor, Mrs. Foistner, and American Corporate in their respective capacities as trustee and/or beneficiary of a Trust Defendant.

B.   Dismissal Under Rule 12(b)(6) for Failure to State a Claim for Relief

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the well-pleaded facts of a complaint as true, drawing all reasonable inferences in the movant's favor, but need not accept as true any allegations that are no more than "labels or conclusions" or "formulaic recitation of the elements of a cause of action."  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  Rather, a complaint must "state a claim to relief that is plausible on its face," rather than merely conceivable.  Twombly, 550 U.S. at 570.  As the Supreme Court fully explained in Iqbal:

---

[30] The Court does not believe, nor has the Trustee argued, that the Trust Defendants are somehow exempt from this general principle.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Iqbal, 556 U.S. at 678 (citations omitted).  "'Moreover, *each* defendant's role in the [adverse action] must be sufficiently alleged to make him or her a plausible defendant.  After all, we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.'"  In re Blast Fitness Group, LLC, 603 B.R. 219, 226 (Bankr. D. Mass. 2019) (quoting Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40-41 (1st Cir. 2012).  See also Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011) ("[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible defendant.").

The Motion asserts that the Complaint fails to provide sufficient factual detail to support each element of the Trustee's causes of action.  The Motion seeks dismissal on the grounds that the Complaint fails to satisfy the heightened pleading standards of Rule 9(b) because it contains

"elusory and false statement[s] that [the Trustee] cannot support with evidence . . ." and fails to "identify a single Transaction, Financial Statements, Testimony given, falsified Document or Fraudulent, deceiving act in detail, as to its name, date, amount, to whom, by whom such act was committed, or such Statement was false and deceptive."  See Memorandum at 8.

Like many of the pleadings filed by the Debtor, the Motion does not clearly specify whether an argument relates to a specific count of the Complaint or otherwise identify the specific causes of action in relation to the arguments contained therein.  Rather, the Motion identifies certain issues relating to the elements of the Trustee's causes of action, generally. These issues include: (i) the Corporate Defendants' separate and distinct existence under Massachusetts law, (ii) Mr. Atkisson and Mrs. Prive's status as "insiders" under Bankruptcy Code § 547(b), (iii) the distinction between property of the Debtor (and thus, estate property) and property of the Corporate Defendants, (iv) the status of the Trustee, Mr. Atkisson and Mrs. Foistner as FLO's creditors, (v) the timing of some of the transfers, and (v) the Trustee's ability to assert preference or fraudulent transfer claims.

C.   The Trustee's Claims for Declaratory Judgments and Successor Liability

The Complaint asserts several causes of action intended to recover and bring the Corporate Defendants and their assets into the estate.  In Counts I through III the Trustee relies on three different (yet interconnected) legal theories, which lay the foundation for his avoidance claims.

In Count I, the Trustee seeks a declaratory judgement that the Corporate Defendants, and thus their assets, are property of the estate.  In Count II, the Trustee seeks a declaratory judgment that the Corporate Defendants and the Defendant Trusts, including their respective trustees and beneficiaries, are alter egos of the Debtor and that their veils should be pierced and treated as a single entity (i.e., reverse veil piercing, single enterprise alter ego theory, and/or substantive

29

consolidation theory).  In Count III, the Trustee seeks to hold American Corporate liable for the debts, acts, actions and omissions and breaches of FLO.  While these counts appear different, they all allege that the Debtor, the Corporate Defendants, and the Trust Defendants are one and the same due to a *de facto* merger carried out by the Debtor on the eve of his bankruptcy filing and/or the Debtor's dominion and control over each defendant.

       *i.*    Count I: Declaratory Judgment that the Corporate Defendants are Property of the Estate

The Motion appears to seek dismissal of Count I on the basis that FLO and American Corporate cannot be considered property of the estate because they were duly formed corporations organized for a legitimate and legal purpose.  Accordingly, the Court construes this argument to mean that the Debtor's assets were separate and distinct from the Corporate Defendants, and thus, did not become a part of the bankruptcy estate on the petition date.  The Trustee disagrees, asserting that the Debtor owned all equity interests in the Corporate Defendants and had exclusive right to control, use, and dispose of the Corporate Defendants' property.  Regarding FLO, the Trustee contends that the Debtor acquired a property interest in FLO's assets by operation of law upon its dissolution, effective May 30, 2017.  Thus, he asserts that the Debtor's property interest in FLO's assets became an interest of the bankruptcy estate on the Petition Date.  He similarly asserts that American Corporate and all of its assets are property of the estate due to a *de facto* merger between FLO and American Corporate on May 30, 2017, at which time the Debtor allegedly transferred all or some of FLO's property (client lists, records, work in process and equipment) to American Corporate without compensation (Complaint ¶ 62) in an undocumented transaction (Complaint ¶ 78), after which American Corporate provided the same services to FLO's clients using virtually the same employees and equipment.

*Property of the Estate Under Bankruptcy Code § 541*

"The moment a bankruptcy petition is filed, the debtor's bankruptcy estate is created." In re Seeling, 471 B.R. 320, 322 (Bankr. D. Mass. 2012). The bankruptcy estate includes non-exempt "legal or equitable interests of the debtor in property as of the commencement of the case" notwithstanding any restrictions or conditions on the debtor's interest, subject to the spendthrift trust provisions of Bankruptcy Code § 541(c)(2). 11 U.S.C. § 541(a)(1); Abboud v. The Ground Round, Inc. (The Ground Round, Inc.), 335 B.R. 253, 259 (B.A.P. 1st Cir. 2005); Pasteurized Eggs Corp. v. Bon Dente Joint Venture (In re Pasteurized Eggs Corp.), 296 B.R. 283, 288-89 (Bankr. D.N.H. 2003). "Section 541 [of the Bankruptcy Code] is construed broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction and the umbrella of protections granted by the Bankruptcy Code, and to promote the goal of equality of distribution." Ground Round, 335 B.R. at 259. See also City of Springfield v. Ostrander (In re Lan Tamers, Inc.), 329 F.3d 204, 209 (1st Cir. 2003). "Under the Bankruptcy Code, a bankruptcy trustee is charged to collect and liquidate all property of the estate and distribute the proceeds to creditors." Notinger v. Brown (In re Brown), ADV. 06-1450-JMD, 2008 WL 2115200, at *4 (Bankr. D.N.H. May 19, 2008), aff'd and remanded sub nom. Brown v. Reifler, CIV. 08-CV-272-SM, 2008 WL 4722987 (D.N.H. Oct. 23, 2008) (citing Hanley v. Notinger (In re Charlie's Quality Carpentry, LLC), 2003 BNH 025, 6 (citing 11 U.S.C. §§ 704, 725 and 726)). State law creates and defines a debtor's property rights and interests. See Nobelman v. American Sav. Bank, 508 U.S. 324, 329 (1993)); Butner v. U.S., 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Accordingly, Massachusetts law governs whether and to what extent the bankruptcy estate has an interest in the assets of the Corporate Defendants, and thus, impacts the Trustee's ability to assert some of his claims under Bankruptcy Code §§ 547 and 548.

Like the Bankruptcy Code, Massachusetts law treats corporations as separate legal entities that are distinct from their shareholders, directors, and officers.  See Portsmouth Livery Co. v. Watson, 10 Mass. 91, 1813 WL 839 (1813).  See also 11 U.S.C. § 101(41) (defining a corporation as a "person" and treating it as a separate legal entity distinct from its shareholders). In Massachusetts, a corporation's assets do not pass to shareholders immediately upon dissolution.  See Mass. Gen. Laws. c. 156D at § 14.05(b) (explaining that dissolution does not "transfer title to the corporation's property . . . .").

When a Massachusetts corporation is dissolved (i.e., its corporate existence is terminated), it continues to exist for a period of three years for the limited "purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property to any person and to make distributions to its stockholders of any assets remaining after the payment of its debts and obligations, but not for the purpose of continuing the business for which it was established."  Mass. Gen. Laws. c. 156B, § 102.  See In re Na-Mor, Inc., 437 B.R. 482, 485 (Bankr. D. Mass. 2010) (rejecting parties' assumption that "immediately upon [the corporation's] dissolution . . . all assets of [the corporation] became property of its sole shareholder" and citing Mass. Gen. Laws. c. 156B, § 102.  While it is true that the property of a dissolved corporation not "otherwise distributed passes to its stockholders as tenants in common[,]" the transfer occurs by operation of law *after* a three-year waiting period—which in this case had not yet passed when the Trustee filed his Complaint on May 29, 2019.  See Colecchi v. Gould Title Co., No. 032170, 2004 WL 2341568, at *3 n.6 (Mass. Super. Oct. 12, 2004) (citing Everett Credit Union v. Allied Ambulance Services, Inc., 12 Mass. App. Ct. 343, 348 (1981); Springfield v. Shaffer, 12 Mass. App. Ct. 277, 279 (1981); Cummington Realty Assocs v. Whitten, 239 Mass. 313 (1921)).

Viewing the Complaint in the light most favorable to the Trustee, the Court concludes that, as of the date the Complaint was filed, the allegations contained therein are insufficient to sustain a finding that the Corporate Defendants and their assets are property of the estate under Bankruptcy Code § 541.  The Debtor, in his individual capacity, filed for bankruptcy, not FLO.  Despite the Trustee's allegations that FLO became the Debtor's property immediately upon its dissolution by operation of law, the applicable law suggests otherwise.  Moreover, although the Debtor was the sole shareholder of FLO, that does not mean FLO's assets were and/or are property of the Debtor, and thus, property of the estate.  Rather, a shareholder only has an interest in a corporation's capital stock.  See Normadin v. Normandin (In re Normandin), 106 B.R. 14, 16 (Bankr. D. Mass. 1989) ("There is not even an arguable ground for a [Bankruptcy Code] § 363(h) sale of assets of the corporation . . . .   Stockholders have no property interest in corporate assets, only in its capital stock."); Herbert v. Simson, 220 Mass. 480, 482, 108 N.E. 65, 66 (1915) ("A share of capital stock is property of a peculiar kind.  Accurately speaking it does not consist in [sic] an interest either legal or equitable in the property of the company.  It is personalty although the corporation may own real estate."); Pratt v. Bacon, 27 Mass. 123, 127 (1830) ("Its real and personal property is deemed to be vested in the corporation and not in the individuals composing it; and these have no other interest in it, or control over it, than the qualified ones, of electing officers and receiving dividends and profits in the manner provided by the act of incorporation, or the votes and by-laws, which may be made pursuant to powers conferred to it.").[31]

---

[31] See also Wynne v. Streetman (In re Russell), 121 B.R. 16, 17-18 (Bankr. W.D. Ark.1990) (assets of corporation were not property of debtor shareholder's bankruptcy estate solely by virtue of shareholder's 82% stock ownership of corporation), but see Grimmett v. McCloskey (In re Wardle), BAP No. NV-05-1000-KMoB, 2006 WL 6811026, at *5 (B.A.P. 9th Cir. Jan. 31, 2006) ("Moreover, the transferred funds were not property of the estate pursuant to [Bankruptcy Code] § 541 because there is no evidence that the funds ever belonged to the debtors.  As the bankruptcy court noted, the funds were property of [the corporation] as evidenced by the fact that they were transferred from [the corporation's] bank account. And as [the] appellee argues, an alter ego determination will not somehow transmogrify [the corporation's] funds into property of debtors' estate."); In re Midwest Athletic Club,

The Trustee's allegations supporting American Corporate and its assets as being property of the estate are similarly insufficient to state a plausible claim for relief.  In the Complaint, the Trustee alleges that American Corporate was organized pre-petition, however, the Business Entity Summary submitted in opposition to the Motion indicates that American Corporate was incorporated post-petition, on June 5, 2017.[32]  Thus, even if a Massachusetts corporation and/or its assets became property of a shareholder-debtor's estate by operation of law, the Trustee has alleged that American Corporate was not in existence on the Petition Date.  As a result, it could not become "property of the estate" pursuant to Bankruptcy Code § 541.  Accordingly, the Motion is **GRANTED** as to Count I.

> ii.    Count II: Declaration that the Corporate and Trust Defendants, Trustees, and Beneficiaries are Alter Egos of the Debtor and/or their Veils Should be Pierced

In Count II, the Trustee alleges an alter ego and veil piercing theory to convert the property of the Corporate Defendants and Trust Defendants into the Debtor's property and, thus, property of the estate under Bankruptcy Code § 541.  In short, he alleges that the Debtor and the Corporate Defendants and Trust Defendants (and/or their trustees and beneficiaries) are one and the same.[33]  The Motion seeks dismissal of Count II on the basis that the Trustee failed to plead sufficient facts supporting a claim for fraud pursuant to the heightened pleading standards of Rule 9.  It further asserts that the Corporate Defendants were validly organized under

---

161 F.2d 1005, 1008 (7th Cir. 1947) (assuming, without deciding, that title to the property of a dissolved Illinois corporation passed to the shareholders as tenants in common); In re Young, 409 B.R. 508, 513 (Bankr D. Idaho 2009) ("It is well accepted that a filing by an individual who is an owner of a corporation brings into the estate only his ownership interest and not the assets of the corporation"); In re Lipuma, 167 B.R. 522, 525 (Bankr. N.D. Ill. 1994) (discussing treatment of dissolved corporation's assets under Illinois law and agreeing that, under Illinois law, an existence of an interest in the assets of a dissolved corporation is dispositive on the issue of whether the debtor's shares in the corporation became property of the estate).

[32] See First Venuti Declaration, Exhibit BV2.

[33] This allegation, if true and otherwise recognized by law, would allow him to avoid the alleged transfers made by: (i) the Debtor to FLO (Count IV), (ii) FLO to JFL (Count V), (iii) JFL to Mr. Atkisson (Count VI), (iv) American Corporate to DCMV and Mrs. Foistner, as trustee and beneficiary of DCMV (Count VII), and (v) the Debtor (via FLO) to Mr. Atkisson (Count VIII).

Massachusetts law and observed the required formalities, preventing the Trustee's attempt to pierce the corporate veil. The Motion does not appear to address the issue of whether the Trustee's alter ego theory can be applied to the Trust Defendants, as opposed to their beneficiaries and/or the trustee. Despite the Trustee's failure (to date) to serve the Debtor and Mrs. Foistner in their respective capacities as trustee and/or beneficiaries of some or all of the Trust Defendants, the Court will address the sufficiency of the allegations as alleged in the Complaint as if service was sufficient.

*Alter Ego and Veil Piercing, Generally*

Courts have observed that "an action to pierce the corporate veil is 'not itself an independent . . . cause of action, but rather is a means of imposing liability on a[n] underlying cause of action.'" In re Clark, 525 B.R. 107, 125 (Bankr. D. Idaho 2014), aff'd, 548 B.R. 246 (B.A.P. 9th Cir. 2016), aff'd, 692 Fed. Appx. 946 (9th Cir. 2017) (unpublished) (quoting Semmaterials, L.P. v. Alliance Asphalt, Inc., No. CV-05-320-S-LMB, 2008 WL 161797, at *3 (D. Idaho Jan. 15, 2008) (quoting Peacock v. Thomas, 516 U.S. 349, 354 (1996))). Moreover, there are various "flavors" of the alter ego and veil piercing theories. Traditionally, "piercing the corporate veil" allows creditors of a corporation to disregard the corporate form to seek recovery from the corporation's principal. In re Wardle, 2006 WL 6811026, at *8 (quoting SEC v. Hickey, 322 F.3d 1123, 1130 (9th Cir. 2003)). Conversely, "[r]everse piercing is a method of holding a corporation liable for the debts of a shareholder." In re Wardle, 2006 WL 6811026, at *8 (quoting Hickey, 322 F.3d at 1130). Like veil piercing, "an alter ego claim is [viewed] as a remedy that, without an underlying substantive cause of action, does not lead to substantive relief." In re Wardle, 2006 WL 6811026, at *7 (citing William Meade Fletcher et. al., Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (perm. ed., rev. vol. 1999)). "A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a

complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation.  An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract. The alter ego doctrine is thus remedial, not defensive, in nature." Id.  (citations and internal quotations omitted).  Therefore, whether the Trustee has alleged a plausible claim for relief depends not only upon the sufficiency of his allegations, but New Hampshire's recognition of the Trustee's alter ego and veil piercing claim as an independent cause of action.

"Because both parties operate as if New Hampshire veil-piercing law applies, the [C]ourt, too, proceeds on the presumption that it does."  Michnovez v. Blair, LLC, 795 F. Supp. 2d 177, 185 (D.N.H. 2011).  See also Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 127 n.5 (1st Cir. 2006) (explaining that "[w]here 'there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties, we will forego an independent analysis of the choice-of-law issue and apply' the substantive law selected by the parties.") (quoting Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 496 n. 2 (1st Cir. 2005)).  In New Hampshire, "[t]he doctrine of piercing the corporate veil is an equitable remedy . . . ." LaMontagne Bldrs., Inc. v. Bowman Brook Purchase Grp., 150 N.H. 270, 274, 837 A.2d 301 (2003) (quoting Terren v. Butler, 134 N.H. 635, 640, 597 A.2d 69 (1991) (quotation and ellipses omitted).  When courts pierce the corporate veil, they "assess individual liability where the owners have used the corporate identity to promote an injustice or fraud . . . ." Norwood Group v. Phillips, 149 N.H. 722, 724, 828 A.2d 300, 302 (2003) (citing Terren, 134 N.H. at 639-41, 597 A.2d at 72.  Put another way, they "disregard the fiction that the corporation is independent of its stockholders and treat the stockholders as the corporation's 'alter egos.'" Id. (citing Village Press v. Stephen Edward Co., 120 N.H. 469, 471-72, 416 A.2d 1373, 1375 (1980)).  See also Terren, 134 N.H. at 639–40, 597 A.2d at 72 (discussing the use and application of the alter ego

doctrine) (citing <u>Druding v. Allen</u>, 122 N.H. 823, 827, 451 A.2d 390, 393 (1982)). "New Hampshire courts do not 'hesitate[ ] to disregard the fiction of the corporation' when circumstances would lead to an inequitable result." <u>Terren</u>, 134 N.H. at 639–40, 597 A.2d at 72 (quoting <u>Ashland Lumber Co. v. Hayes</u>, 119 N.H. 440, 441, 402 A.2d 201, 202 (1979) (citation omitted)). Nevertheless, the New Hampshire Supreme Court recognizes that "'one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment.'" <u>LaMontagne</u>, 150 N.H. at 275, 837 A.2d at 306 (quoting <u>Peter R. Previte, Inc. v. McAllister Florist, Inc.</u>, 113 N.H. 579, 582, 311 A.2d 121, 123 (1973)). Accordingly, "in New Hampshire, corporate veil piercing and the alter ego doctrine have been used to do one thing only: hold the owners of corporations liable for the debts of the corporations they own." <u>Michnovez</u>, 795 F. Supp. 2d at 186.

In New Hampshire, the alter ego doctrine allows "plaintiffs to pierce the corporate veil to place the liability of the corporation at the feet of one or more of its principals." <u>Terren</u>, 134 N.H. at 639, 97 A.2d at 72. Courts in New Hampshire may pierce a corporate veil "by finding that the corporate identity has been used to promote an injustice or fraud on the plaintiffs." <u>Terren</u>, 134 N.H. at 639, 597 A.2d 69. <u>See also</u> <u>Terren</u>, 134 N.H. at 641, 597 A.2d at 72–73 (citing <u>Directors Guild of Amer. v. Garrison Productions</u>, 733 F. Supp. 755, 762 (S.D.N.Y. 1990) (Shareholder dominating corporation and "carrying on a business without substantial assets to meet its debts can justify piercing the corporate veil") (citations omitted))).

Count II alleges sufficient facts that, when viewing the Complaint in the light most favorable to the Trustee, sustain a plausible claim for the imposition of alter ego liability on the Corporate Defendants. The Complaint alleges that the Debtor used FLO to promote an injustice or fraud by permitting FLO to raise equity or borrow money without disclosing its business and financial condition (Complaint ¶¶ 65, 67); disregarded the corporate form by using FLO's

Merrimack Federal account as his "personal piggy bank" (Complaint ¶ 95) and its business activities without regard to accounting or corporate formalities (Complaint ¶ 68); owned and exercised dominion and control over FLO's bank accounts (Complaint ¶ 91); and used his own personal financial statement to secure the Newtek Loan on behalf of FLO (Complaint ¶ 92).

The Complaint further alleges that the Debtor dissolved FLO (Complaint ¶ 33) and had the exclusive right to control, use and dispose of its properties and interests (Complaint ¶ 60). Like FLO, the Debtor allegedly exercised dominion and control over American Corporate's business activities and assets without regard to accounting or corporate limited liability formalities, using the corporation when and how he chose (Complaint ¶ 68), and formed the company to promote injustice or fraud upon the Debtor's creditors (Complaint ¶ 67). Specifically, the Complaint alleges that the Debtor formed American Corporate to move his and/or FLO's assets beyond the reach of their creditors, to further the New Boston scheme, and to promote vexatious litigation against creditors, their attorneys, and judges in recognition of the Debtor and FLO's insolvency and the Shelzi Litigation (Complaint ¶¶ 70, 77, 84, 85).

The Complaint fails to allege a plausible claim for alter ego liability against the Trust Defendants, which are neither corporations nor any other type of entity entitled to limited liability. "'Given that a trust is not an entity, it is impossible for a trust to be anybody's alter ego because [the] alter-ego theory, which is simply one of the grounds to 'pierce the corporate veil,' is inescapably linked to the notion that one person or entity exercises undue control over another person or entity. However, a trust's status as a non-entity logically precludes a trust from being an alter ego.'" Butler v. Candlewood Rd. Partners, LLC, (In re Raymond), 529 B.R. 455, 463 (Bankr. D. Mass. 2015) (quoting 2 Richard W. Nenno, Asset Protection: Dom. & Int'l L. & Tactics, § 14A:20 (2014) (footnotes omitted); contra, Pergament v. Maghazeh Family Trust (In

re Maghazeh), 310 B.R. 5 (Bankr. E.D.N.Y. 2004) (citing Babitt v. Vebeliunas (In re Vebeliunas), 332 F.3d 85 (2d Cir. 2003)).

Finally, Count II alleges sufficient facts to support a plausible claim for relief for alter ego *liability* as to the trustee and beneficiaries of the Trust Defendants (Complaint ¶¶ 67, 68, 69, 70, 116, 144, 154, 158).  Like the allegations concerning the Corporate Defendants as the Debtor's alter egos, the Complaint similarly alleges that the Debtor exercised dominion and control over Mrs. Foistner, Mr. Atkisson, and American Corporate, directing them to transfer or hold funds from JFL, DCMV, and Red River in furtherance of the New Boston Development scheme or the Concealment Scheme and to put the Debtor's assets beyond the reach of his creditors.  "'Whereas applying alter-ego doctrine to trusts is conceptually unsound, applying the doctrine to trustees is a different proposition.  Trustees are real persons, either natural or artificial, and, as a conceptual matter, it is entirely reasonable to ask whether a trustee is the alter ego of a defendant who made a transfer into trust.  [The] Alter-ego doctrine can therefore provide a viable legal theory for creditors vis-a-vis trustees.'"  In re Raymond, 529 B.R at 463 (quoting Nenno, supra, § 14A:20) (citations omitted)).

For these reasons, Count II survives only to the extent that it seeks a determination of alter ego liability as to the Corporate Defendants and the trustees and beneficiaries of the Trust Defendants, which the Court views as a separate and distinct legal theory from one that seeks to treat the Trust Defendants and/or their trustees and beneficiaries, the Corporate Defendants, and the Debtor as a single entity (Complaint ¶ 73).  While New Hampshire law provides a basis for disregarding the corporate form to assess liability on a corporation's shareholders where the shareholders used the corporate form to perpetuate fraud or injustice, and this Court has permitted such claims to proceed against trustees and their successor trustees (see Notinger v. Brown, 2008 WL 2115200), aff'd and remanded sub nom. Brown v. Reifler, 2008 WL

39

4722987),[34] the Trustee has not cited any case law (nor has this Court found any controlling New Hampshire case law) that permits the Court to treat the Corporate and Trust Defendants and their trustees and beneficiaries as a single entity and/or attribute to the Debtor the actions and conduct of the Corporate Defendants, the Trust Defendants and their trustees and/or beneficiaries.  See Homes Dev. Corp. v. Edmund & Wheeler, Inc., Case No. 21-CV-0633-SM, 2022 WL 4586480, at *12 (D.N.H. Sept. 29, 2022).[35]  See also In re Wardle, 2006 WL 6811026, at *7 ("[T]he trustee misconstrues the consequence of an alter ego finding.  While the trustee's theory would result in some type of merger, an alter ego finding only imposes liability.") (citations omitted)).

The Court notes that while the Complaint does not explicitly articulate a claim for substantive consolidation per se, courts in the First Circuit have recognized substantive consolidation as a means to achieve the result the Trustee attempts to seek in Paragraph 73 of the Complaint via his alter ego theory—that the Court treat the Debtor, FLO, American Corporate, the Trust Defendants, and their trustees and/or beneficiaries as a single entity (allowing the Court to attribute actions of a non-debtor entity or person to a debtor) to provide creditors and others

---

[34] In Notinger v. Brown, the chapter 7 trustee, having intervened in a proceeding that was removed to this Court, sought to recover assets contained in alter ego and sham trusts that the debtor allegedly held an interest in on the Petition Date and used to conceal said interest in a prior bankruptcy case (Adv. Pro. 06-1450-JMD, Doc. No. 1). Neither the Court, nor the defendants challenged the sufficiency of the allegations supporting the trustee's alter ego/ sham trust claim.

[35] As the District Court for the District of New Hampshire observed in Homes Dev. Corp.:

> "the fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law." Vill. Press, Inc. v. Stephen Edward Co., 120 N.H. 469, 471 (1980) (citations omitted).  And, critically, "in New Hampshire, corporate veil piercing and the alter-ego doctrine have been used to do one thing only: hold the owners of corporations liable for the debts of the corporations they own."  Michnovez v. Blair, LLC, 795 F. Supp. 2d 177, 186 (D.N.H. 2011). Plaintiffs point to no authority "for the proposition that New Hampshire would, if presented with the question, adopt a single-enterprise theory . . . , under which an entity other than an owner of a corporation could be held liable for that corporation's conduct by means of veil piercing."  Id.

Homes Dev. Corp., 2022 WL 4586480, at *12.

with a remedy for fraud or injustice.  See In re Raymond, 529 B.R. at 489-90; Logistics Info.
Sys., Inc. v. Braunstein (In re Logistics Info. Sys., Inc.), 432 B.R. 1, 11 (Bankr. D. Mass. 2010);
Gray v. O'Neill Props. Group, L.P. (In re Dehon, Inc.), No. 02-41045, 2004 WL 2181669, at *3
(Bankr. D. Mass. Sept. 24, 2004) ("Large corporations, such as the [d]ebtor, often use multi-
tiered corporate structures, and substantive consolidation has been used to reach the assets and
liabilities of a non-debtor subsidiary corporation."); Murphy v. Stop & Go Shops, Inc. (In re Stop
& Go of Am., Inc.), 49 B.R. 743, 746 (Bankr. D. Mass. 1985).  See also Woburn Assocs. v.
Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 11-12 (1st Cir. 1992).

"Bankruptcy courts may substantively consolidate two or more related entities and
thereby pool their assets.  Substantive consolidation 'treats separate legal entities as if they were
merged into a single survivor left with all the cumulative assets and liabilities.'"  In re Raymond,
529 B.R. at 490 (quoting In re Logistics Info. Sys., Inc., 432 B.R. at 10-12 (quoting Genesis
Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.), 402 F.3d 416, 423 (3d
Cir. 2005)).  While the Bankruptcy Code does not explicitly provide the Court with authority to
consolidate, such authority is "deemed to derive from the bankruptcy court's general equitable
powers as expressed in [Bankruptcy Code] § 105 . . . ."  Id. (quoting In re Logistics Info. Sys.,
Inc., 432 B.R. at 10-12 (citing Eastgroup Props. v. S. Motel Ass'n, 935 F.2d 245, 248 (11th Cir.
1991); Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860
F.2d 515, 518 n.1 (2d Cir. 1988)).

Although substantive consolidation of two or more debtors is more common than the
consolidation of one or more non-debtors with a debtor, the latter is "increasingly accepted."  In
re Raymond, 529 B.R. at 490 (quoting In re Logistics Info. Sys., Inc., 432 B.R. at 10-12).  The
increasing approval of substantive consolidation "has its genesis in the increased judicial
recognition of the widespread use of interrelated corporate structures . . . ."  In re Logistics Info.

Sys., Inc., 432 B.R. at 10-12 (quoting Eastgroup Props., 935 F.2d at 249 (quoting In re Murray

Indus., Inc., 119 B.R. 820, 828-29 (Bankr. M.D. Fla. 1990))).  Indeed, "[w]ithout the check of

substantive consolidation, debtors could insulate money through transfers among inter-company

shell corporations with impunity."  Id. (quoting Alexander v. Compton (In re Bonham), 229 F.3d

750, 764 (9th Cir. 2000)).

Accordingly, the Motion is **GRANTED** as to Count II in relation to the Trust Defendants

themselves and **DENIED** as to the Corporate Defendants and the trustees and beneficiaries of the

Trust Defendants.

> *iii.*   Count III: Successor Liability Against American Corporate

In Count III, the Trustee seeks a determination that American Corporate is the successor

of FLO by a *de facto* merger and, thus, liable for all FLO's breaches of contracts, debts, actions

and omissions and violations of federal and state law.  The Complaint cites many of the same

facts supporting the Trustee's alter ego theory, including: (i) the Debtor's dominion and control

over the Corporate Defendants and their actions (Complaint ¶ 76); (ii) the Debtor and FLO's

alleged transfer of most[36] of FLO's assets to American Corporate in an "undocumented

transaction in the anticipation of the" Debtor's bankruptcy filing (including some of the Newtek

Loan Proceeds) (Complaint ¶¶ 77-78); and (iii) FLO and American Corporate having the same

equity holder (the Debtor), mailing address, management, and assets (Complaint ¶ 83).  The

Complaint further alleges that the Debtor's silent transfer of FLO's assets to American Corporate

was intended to leave the Debtor and FLO's creditors without a remedy, "particularly when

---

[36]  Note that the allegations in paragraphs 78 and 82 of the Complaint appear to conflict with one another.  While paragraph 78 admits that not all of the Newtek Loan Proceeds were transferred to American Corporate (Complaint ¶ 78), paragraph 82 states that a *de facto* "merger occurs when a company is *completely* absorbed into another through a sale of assets or transfers its assets without consideration; continues its operations by maintaining the same management, personnel, assets, location and stockholders; but leaves creditors without a remedy for its outstanding debt" (Complaint ¶ 82) (emphasis added).

coupled with the disbursement of the Newtek Loan Proceeds as part of the plan;" the Debtor, FLO, and American Corporate implemented the silent *de facto* merger of the Corporate Defendants due to the Debtor's and FLO's insolvency and the Shelzi Litigation;[37] the Debtor and FLO did not comply with Massachusetts law regarding mergers or dissolution (Complaint ¶ 79); and that the Debtor gave public notice of American Corporate's formation on May 30, 2017, the same date FLO was dissolved (Complaint at ¶ 80).

"A general precept of commercial law is that 'a corporation purchasing the assets of another corporation is not liable for the seller's debts.'" Celestica, LLC v. Commun. Acquisitions Corp., 168 N.H. 276, 280, 126 A.3d 835, 839 (N.H. 2015) (quoting Bielagus v. EMRE of N.H., 149 N.H. 635, 640, 826 A.2d 559, 564 (2003)). "'This rule . . . allows, in the regular course of business, free alienability of corporate assets to maximize their productive use.'" Id. (quoting Bielagus, 149 N.H. at 640, 826 A.2d at 564) (noting the rule's consistency with N.H. Rev. Stat. Ann. § 293-A:12.01 (1999))). Courts recognize exceptions to this rule, which are "'intended to prevent corporations from evading their business obligations to creditors by selling their assets.'" Id. (quoting Bielagus, 149 N.H. at 640, 826 A.2d at 564). In New Hampshire, a court may impose liability on a successor corporation if:

> (1) there is an express or implied assumption of liability; (2) the transaction amounts to consolidation or merger; (3) the transaction was fraudulent; (4) some of the elements of a purchaser in good faith were absent; and (5) the transferee corporation was a mere continuation or reincarnation of the old corporation.

Nichols v. Roper-Whitney Co., 843 F. Supp. 799, 803 (D.N.H. 1994) (quoting Cyr v. B. Offen & Co., 501 F.2d 1145, 1152 (1st Cir. 1974)).

---

[37] Paragraph 77 of the Complaint refers to the Shelzi Litigation as the then-imminent "hanging trial" of the Debtor, in his individual capacity and as trustee (Docket No. 216-2016-CV-00555), presided over by Judge David Ruoff (Complaint ¶ 77).

The *de facto* merger exception imposes successor liability "'if the parties achieved virtually all of the results of a merger' without following the statutory requirements for merger of the corporations.'"  Bielagus, 149 N.H. at 640-41, 826 A.2d at 565 (quoting Kleen Laundry and Dry Cleaning Servs., Inc. v. Total Waste Mgt. Corp., 817 F. Supp. 225, 230 (D.N.H. 1993)). "[A] *de facto* merger occurs when a company is completely absorbed into another through a sale of assets; continues its operations by maintaining the same management, personnel, assets, location and stockholders; but leaves its creditors without a remedy for its outstanding debt." Bielagus, 149 N.H. at 641, 826 A.2d at 565.  The Supreme Court of New Hampshire has enumerated four non-exclusive factors for courts to consider "when determining if a purported sale of assets is a *de facto* merger."  Bielagus, 149 N.H. at 641, 826 A.2d at 565.  These factors include:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
> (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Id. at 642, 826 A.2d at 565-66 (citations omitted).  "The factor that usually 'tips the scales in favor of finding a merger is continuity of ownership, usually taking the form of an exchange of stock for assets."  Id. at 642, 826 A.2d at 566 (quoting Devine & Devine Food v. Wampler Foods, 313 F.3d 616, 619 (1st Cir. 2002) (applying Virginia Law, which is consistent with the factors applied by courts in New Hampshire).  In addition to the four factors, "[t]he fact-finder may look to other factors indicative of commonality or distinctiveness with the corporations."

Id. at 641, 826 A.2d at 565 (citation omitted).  "The fraudulent transfer of assets exception to the general rule of successor nonliability applies when assets are transferred in order to escape liability."  Nichols, 843 F. Supp. at 804.

When viewing the Complaint in the light most favorable to the Trustee, Count III states a plausible claim for relief for successor liability based on either a *de facto* merger of FLO and American Corporate, or on allegations that FLO's assets were fraudulently transferred to leave FLO's creditors without a remedy and in light of the then-impending litigation (Complaint ¶¶ 77, 84).  Furthermore, the Trustee sufficiently alleged a continuity of management, personnel, and general business operations between FLO and American Corporate (Complaint ¶¶ 76, 78, 82).  These factors, coupled with the Debtor's alleged public noticing of American Corporate's formation on May 30, 2017 (Complaint ¶ 80), which was the effective date of FLO's dissolution, and the Debtor's silent and undocumented transfer of FLO's assets (Complaint ¶ 78), if accepted as true, support a finding that American Corporate was carrying on the business of FLO.  These factual allegations could also support a finding that the Debtor organized American Corporate to limit FLO's (an alleged alter ego of the Debtor) liability to creditors.  Although the Complaint states that less than all of FLO's assets (including the Newtek Loan Proceeds) were transferred to American Corporate (suggesting the possible inapplicability of the *de facto* merger exception), when viewing the Complaint as a whole, and in the context of the alleged New Boston Development scheme and the Concealment Scheme (i.e., the apparent use of vexatious litigation tactics), the failure to allege a transfer of all of FLO's assets to American Corporate is not fatal to the Trustee's claim for successor liability in the context of a Rule 12(b)(6) motion.  Accordingly, the Motion is **DENIED** as to Count III.

### D. The Trustee's Preferential and Fraudulent Transfer Claims

Counts IV through IX seek to avoid various transfers made by or between the Debtor, the

Corporate Defendants, the Trust Defendants, and their respective trustees and/or beneficiaries as

preferential transfers under Bankruptcy Code § 547; fraudulent transfers under Bankruptcy Code

§ 548(a) and New Hampshire's Fraudulent Transfer Act (which is codified in N.H. Rev. Stat.

Ann. § 545-A:4-5), and/or unauthorized post-petition transfers of estate property pursuant to

Bankruptcy Code § 549.

*Avoidance of Preferential Transfers*

Bankruptcy Code § 547(b) permits the Trustee to, subject to certain exceptions, avoid

preferential transfers[38] of "an interest of the *debtor* in property" if he can establish the following:

> (1) [the transfer was] to or for the benefit of a creditor;
> (2) [the transfer was made] for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) [the transfer was mas] made while the debtor was insolvent;[39]
> (4) [the transfer was] made--
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) [the transfer] enables such creditor to receive more than such creditor would receive if--
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[38] Bankruptcy Code § "101(54) defines 'transfer' as: (A) the creation of a lien; (B) the retention of a title as security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute of conditional, voluntary or involuntary, of disposing of or parting with (i) property; or an interest in property."  5 <u>Collier on Bankruptcy</u> P 547.03 (16th 2002).

[39] Under Bankruptcy Code § 101(32)(A)(i)-(ii) "the term 'insolvent' means— with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation, exclusive of— (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under [Bankruptcy Code §] 522 . . . .").  11 U.S.C. § 101(32)(A)(i)-(ii).  Bankruptcy Code § 547(f) creates a rebuttable presumption of insolvency for the 90 days immediately preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(f).

11 U.S.C. § 547 (emphasis added).  Under this section, the property transferred must belong to the debtor, but the debtor himself does not need to effectuate the transfer.  See Warsco v. Preferred Tech. Grp., 258 F.3d 557, 564 (7th Cir. 2001) ("transfer need not be made directly by the debtor; indirect transfers made by third parties to a creditor on behalf of the debtor may also be avoidable under the [Bankruptcy] Code").  See also Nat'l Bank of Newport v. Nat'l Herkimer Cty. Bank of Little Falls, 225 U.S. 178, 184, (1912) ("To constitute a preference, it is not necessary that the transfer be made directly to the creditor.  It may be made to another, for his benefit.  If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it.")

Where the debtor is an individual, an "insider" is a "(i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control."  11 U.S.C. § 101(31)(A)(i)-(iv).  However, this "list is not exhaustive."  Rentas v. Olavarria (In re Editorial Flash, Inc.), CASE No. 14-08014 BKT, 2016 WL 3638471, at *3 (Bankr. D.P.R. June 29, 2016) (citing Koch v. Rogers, 135 F.3d 769 (4th Cir.1998)).  "'As such, insider status must be determined on a case by case basis through examination of the totality of the circumstances and the creditor's degree of involvement in the debtor's affairs.'"  Id. (quoting In re Chas. P. Young Co., 145 B.R. 131, 136 (Bankr. S.D.N.Y. 1992)).  To qualify as an insider, the person "must have considerable control or a high likelihood of control over a debtor."  Matson v. Strickland (In re Strickland), 230 B.R. 276, 285 (Bankr. E.D. Va. 1999).  See also Miller v. Schuman (In re Schuman), 81 B.R. 583, 586 (B.A.P. 9th 1987) ("The tests developed by the courts in determining who is an insider focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor.")

*Avoidance of Fraudulent Transfers Under the Bankruptcy Code*

Bankruptcy § 548 allows a trustee to avoid transfers based on actual fraud or constructive fraud.  See 11 U.S.C. § 548(a)(1)(A) (requiring "actual intent to hinder, delay, or defraud . . . ."); 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(focusing on the economic status of the debtor and the objective reasonableness of transaction to imply fraud).  Bankruptcy Code § 548 provides that:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, *if the debtor* voluntarily or involuntarily--
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(A) and (B)(i)-(ii)(I)-(IV) (emphasis added).  These provisions seek "to prevent the debtor from depleting resources available to creditors by the gratuitous transfer of the debtor's property."  In re Editorial Flash, Inc., 2016 WL 3638471, at *3 (quoting Walker v. Treadwell, 699 F.2d 1050, 1051 (11th Cir.1983)).  "The transfer of any interest in the property of a debtor, within [two years] of the filing of a petition in bankruptcy, is voidable by the trustee in bankruptcy if the purpose of the transfer was to prevent creditors from obtaining satisfaction of their claims against the debtor by removing the property from their reach."  Max Sugarman

Funeral Home, Inc. v. A.D.B. Inv'rs., 926 F.2d 1248, 1254 (1st Cir. 1991) (citing In re Warner, 87 B.R. 199, 203 (Bankr. M.D. Fla.1988) (construing 11 U.S.C. § 548(a)(1)).

"'Actual' fraud requires proof that the debtor 'made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.'" In re Editorial Flash, Inc., 2016 WL 3638471, at *3 (quoting 11 U.S.C. § 548(a)(1)(A)). "It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors . . . courts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, . . . taking particular note of certain recognized indicia or badges of fraud." Id. (quoting Max Sugarman, 926 F.2d at 1254-55).

> Among the more common circumstantial indicia of fraudulent intent *at the time of the transfer* are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.

Max Sugarman, 926 F.2d at 1254. While "a single badge of fraud may spur mere suspicion . . . ; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." Id. at 1254-55 (internal citation omitted). "A claim for actual fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A) or applicable state law must satisfy the requirements of [Rule] 9(b)[,]" which is made applicable to this proceeding via Bankruptcy Rule 7009. Rentas v. Gomez (In re Indrescom Sec. Tech. Inc.), 559 B.R. 305, 317 (Bankr. D.P.R. 2016) (citing Geltzer v. Barishin (In re Geltzer), 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013); Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am.

Tower Corp. (In re Verestar, Inc.), 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006)).  See also Fed. R. Civ. P. 9(b) (pleading requirements for fraud or mistake and g particular conditions of mind); Fed. R. Bankr. P. 7009 (applying Rule 9 to adversary proceedings).

Constructive fraud may be found "when the debtor receives less than a reasonably equivalent value for a transfer and either is insolvent at the time of transfer, or becomes insolvent because of it."  In re Personal and Bus. Ins. Agency, 334 F.3d 239, 242 (3d Cir. 2003).  When considering constructive fraudulent claims, courts evaluate: "(1) whether debtor received value, (2) whether the value received was in exchange for the property transferred, and (3) whether the value was reasonably equivalent to the value of the property transferred."  In re Editorial Flash, Inc., 2016 WL 3638471, at *4 (quoting Mann v. Brown (In re Knight), 473 B.R. 847, 850 (Bankr. N.D. Ga. 2012)).  Complaints alleging constructive fraudulent transfers "need only [to] set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him." Burtch v. Hutson (In re USDigital, Inc.), 443 B.R. 22, 38 (Bankr. D. Del. 2011).  "'Claims for constructive fraudulent transfer need only satisfy the less rigorous requirements of Rule 8(a)[,]'" which are made applicable to this proceeding by Rule 7008.  Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.), 454 B.R. 6, 22 (Bankr. D.N.H. 2011).  See also Fed. R. Civ. P. 8(a) (listing requirements for pleadings stating a claim for relief); Fed. R. Bankr. P. 7008 (applying Rule 8 to adversary proceedings).

*Avoidance of Fraudulent Transfers Under New Hampshire Law*

"Section 544(b) of the Bankruptcy Code permits the avoidance of transfers that are voidable under applicable law by an unsecured creditor."  Notinger v. Brown, 2008 WL 2115200, at *9 (citing 11 U.S.C. § 544(b); Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.), 371 B.R. 589, 634 (Bankr. D.N.H. 2007)).  Under Bankruptcy Code § 544(b), "applicable law" includes New Hampshire's version of the Uniform Fraudulent Transfer

Act (the "UFTA"), which is codified in N.H. Rev. Stat. Ann. § 545-A.  Section 545-A:4(I)(a)-(b)

of the UFTA governs "Transfers Fraudulent as to Present and Future Creditors," providing:

> I. A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor made
> the transfer or incurred the obligation:
> (a) with actual intent to hinder, delay, or defraud any creditor; or
> (b) (1) Was engaged or was about to engage in a business or a
> transaction for which the remaining assets of the debtor were
> unreasonably small in relation to the business or transaction; or
> (2) Intended to incur, or believed or reasonably should have believed
> that he would incur, debts beyond his ability to pay as they became
> due.

N.H. Rev. Stat. Ann. § 545-A:4(I)(a)-(b).  Under the UFTA, actual fraud "requires proof that 'the

debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the

debtor.'"  Dahar v. Jackson (In re Jackson), 318 B.R. 5, 13 (Bankr. D.N.H. 2004) (quoting N.H.

Rev. Stat. Ann. § 545-A:4(I)(a)).  According to the official commentary to the uniform version

of this statute:

> [t]he phrase "hinder, delay, or defraud" . . . is potentially applicable
> to any transaction that unacceptably contravenes norms of creditors'
> rights. [The statute] is sometimes said to require "actual fraud," by
> contrast [with other sections of UFTA], which are said to require
> "constructive fraud." That shorthand is highly misleading. By its
> terms, [the statute] applies to a transaction that "hinders" or "delays"
> a creditor, even if it does not "defraud" the creditor. "Hinder, delay,
> or defraud" is best considered to be a single term of art describing a
> transaction that unacceptably contravenes norms of creditor's rights.
> Such a transaction need not bear any resemblance to common-law
> fraud.

M&M Elec. Supply Co., Inc. v. Blais (In re Blais), Case No. 17-11627-BAH, 2021 WL 4483099,

at *10-11 (Bankr. D.N.H. Sept. 30, 2021) (quoting Unif. Voidable Transactions Act § 4 cmt. 8

(2014) (citations omitted)).  The statute focuses on the transferor's intent at the time of the

transfers.  In re Jackson, 318 B.R. at 13.  Actual intent may be inferred from the following non-

exclusive list of factors:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suiI(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.H. Rev. Stat. Ann. § 545-A:4(II)(a)-(k).  See also In re Jackson, 318 B.R. at 13 (describing the factors as statutory badges of fraud that are "a nonexclusive catalogue of factors appropriate for consideration by the court in determining whether the debtor had an actual intent to hinder, delay, or defraud one or more creditors[]") (quoting Unif. Fraudulent Transfer Act § 4, cmt. 5, 7A U.L.A. 654 (2004))).

Section 545:A-5 of the UFTA applies to transfers that are fraudulent as to present creditors and provides that:

I. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

II. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

See N.H. Rev. Stat. Ann. § 545:A-5(I)-(II).  "Thus, under UFTA, transfers may be found fraudulent if made with actual intent to defraud (i.e., 'actual' fraud claims under [N.H. Rev. Stat. Ann. § 545-A:4(I)(a)]), or if made under circumstances which, in the absence of actual fraud, are deemed fraudulent (i.e., 'constructive' fraud claims under [N.H. Rev. Stat. Ann. §§ 545-A:4(I)(b)] and 545-A:5(I) and (II))."  In re Felt Mfg. Co., Inc., 371 B.R. at 635.

### Avoidance of Post-petition Transfers

Bankruptcy Code § 549(a)(1) and (a)(2)(B) allow a trustee to avoid an unauthorized post-petition transfer of property of the estate.  See 11 U.S.C. § 549(a)(1) and (a)(2)(B).  To sustain a cause of action under this section, the Trustee must have plead sufficient facts that, if true, establish the following elements: "[(i)] [t]here was a transfer; [(ii)] of property of the estate; [(iii)] after the commencement of the [Bankruptcy] [C]ase; [(iv)] that was not authorized under the Bankruptcy Code or by [this C]ourt."  Miranda v. Doral Fin. Corp. (In re Marrero), 382 B.R. 861, 865-66 (B.A.P. 1st Cir. 2008) (listing the elements of an avoidance action under Bankruptcy Code § 549) (citing Riley v. Tougas (In re Tougas), 338 B.R. 164, 177-78 (Bankr. D. Mass. 2006))).

### Holding Transferees Liable

Bankruptcy Code § 550(a) governs the liability of transferees of avoided transfers.  See 11 U.S.C. § 550.  "[T]o the extent that a transfer is avoided under [Bankruptcy Code § 544, 545, 547, 548, 549, 553(b), or 724(a) [of the Bankruptcy Code]," this section allows a trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of the property transferred" from either the initial transferee or later transferees.  Id.  Bankruptcy Code § "550(a) defines the party from whom a trustee may seek to recover the property fraudulently transferred or the value or proceeds of such property."  Notinger v. Brown, 2008 WL 2115200, at *10 (citing In re Felt Mfg. Co., Inc., 371 B.R. at 625 (citing Richardson v.

United States (In re Anton Noll, Inc.), 277 B.R. 875, 878 (B.A.P. 1st Cir. 2002); Crafts Plus+, Inc. v. Foothill Cap. Corp. (In re Crafts Plus+, Inc.), 220 B.R. 331, 334 (Bankr. W.D. Tex. 1998))). "It 'enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee.'" In re Crafts Plus+, Inc., 220 B.R. at 334 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 375–376 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 90 (1978)).

  *i.*  Count IV: Avoidance of $202,206 Transfer Made by the Debtor to FLO on May 18, 2017.[40]

Count IV seeks to avoid the Debtor's alleged transfer of $202,206 to FLO on May 18, 2017 under Bankruptcy Code §§ 547 (herein, "Count IV(a)") and 548 (herein, "Count IV(b)") and the UFTA with respect to creditors and other persons holding claims that arose before or after the transfer, including those named by the Debtor in his Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:4(I)(a) and (b)) (herein, "Count IV(c)(i)") and/or creditors and other persons "whose claim[s] arose before the transfer w[as] made," including without limitation, those named in the Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:5(I) and (II) (herein, "Counts IV(c)(ii)(1) and (2)").

Based on a review of the arguments contained in the Motion, which do not identify the specific cause of action to which they relate, the Court construes the Motion as seeking the dismissal of Count IV in its entirety on the basis that the $202,206 deposit into FLO's St. Mary's Account was neither a transfer of the Debtor's property nor an "unlawful act." The Motion also

---

[40] Counts IV through IX of the Complaint each combine several different and alternative claims into one count. For the sake of analyzing each claim within each count, this opinion breaks the claims down by adding subparagraph designations to each of them, even though those designations do not themselves appear in the Complaint.

seeks dismissal of Count IV based on the Trustee's failure to state with particularity the circumstances constituting fraud as required by Rule 9.[41]

Count IV(a) does not alleged a plausible claim for relief under Bankruptcy Code § 547(b) because the Complaint fails to plead sufficient facts that, if accepted as true, would support a finding that FLO was a creditor of the Debtor or that the Debtor transferred the $202,206 of Newtek Loan Proceeds to FLO "on account of an antecedent debt owed by the Debtor before such transfer was made." 11 U.S.C. § 547(b)(2). See also 11 U.S.C. § 547(b)(1) (requiring transfer to be "to or for the benefit of a creditor"). Rather, the Complaint alleges that the Debtor had "no liability to FLO" as of December 31, 2016 (Complaint ¶ 92) and that FLO owed the Debtor $370,190 (Complaint ¶ 93).[42]

Count IV(b) states a plausible claim for relief because the Complaint pleads sufficient facts that, if accepted as true, satisfy the elements of Bankruptcy Code § 548(a)(1)(A) and meet the heightened pleading standards for actual fraud under Rule 9 and Bankruptcy Rule 7009 (to the extent necessary). The Complaint alleges that the Debtor was the owner and had legal right to the $202,206 of Newtek Loan Proceeds when Merrimack issued the check payable to him in his individual capacity on May 17, 2017 (Complaint ¶ 98), which satisfies Bankruptcy Code § 548(a)(1). The Complaint further alleges that the Debtor opened the FLO St. Mary's Account on May 18, 2017, and deposited the $202,206 into the account "with an actual intent to hinder, delay or defraud entities and creditors to which he was indebted on" May 18, 2017 (Complaint

---

[41] Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). If the Trustee alleges fraud on the part of the Debtor, "the [C]omplaint must, at a minimum, allege 'the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated.'" Homes Dev. Corp., 2022 WL 4586480, at *7 (quoting Clearview Software Int'l Inc. v. Ware, No. 07–CV–405–JL, 2009 WL 2151017, at *1, n.3 (D.N.H. July 15, 2009). See also Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) ("This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation.") (citation and internal punctuation omitted)). "The other elements of fraud, such as intent and knowledge, may be averred in general terms." Rodi, 389 F.3d at 15 (citing Fed. R. Civ. P. 9(b)).
[42] See Fed. R. Civ. P. 8(d)(2).

¶¶ 99, 100, 106).  Although an allegation that a debtor had actual fraudulent intent to hider, delay or defraud alone would be insufficient under the heightened pleading standards of Rule 9, the factual allegations regarding the Debtor and FLO's insolvency, the impending civil and criminal litigation (Complaint ¶¶ 18, 77), the mechanics of the New Boston Development scheme (Complaint ¶¶ 69, 70, 71, 78, 107(c)), the Emergency Meeting regarding FLO's dissolution and decision to pursue civil litigation on the eve of the Debtor's bankruptcy filing (Complaint ¶¶ 58, 59), the Debtor's alleged use of FLO as his alter ego and his "personal piggy bank" (Complaint ¶ 95), and the Debtor's formation of American Corporate to transfer all or most of FLO's assets (including the Newtek Loan Proceeds) beyond the reach of creditors (Complaint ¶ 67) sufficiently plead with particularity the circumstances demonstrating the Debtor's fraudulent conduct and/or intent to hinder or delay his creditors by moving assets and the Newtek Loan Proceeds beyond their reach.

Count IV(b) of the Complaint also pleads a plausible claim for relief under Bankruptcy Code § 548(a)(1)(B).  The Complaint alleges that the Debtor knew he would have to file for bankruptcy prior to March 1, 2017 (Complaint ¶ 90) and had not received "[g]ross or net income from FLO during from January of 2017 to May of 2017 despite being allegedly owed $370,190 by FLO (Complaint ¶ 93).  Accordingly, the Debtor's alleged receipt of $202,246.209 from FLO and subsequent transfer of $202,206 by depositing the check into the FLO St. Mary's Account on May 18, 2017 (Complaint ¶¶ 96-100), sufficiently alleges that the Debtor was either insolvent or became insolvent because of the transfer.  Likewise, the allegations regarding the formation of American Corporate and the decision to commence lawsuits against various individuals shortly after the transfer satisfy Bankruptcy Code § 548(a)(1)(B)(ii)(II) and (III) (Complaint ¶¶ 58, 59, 77, 78).  Finally, the Complaint includes allegations that, if accepted as true, bring FLO and Mrs.

Foistner within Bankruptcy Code § 101(31)(A)'s definition of an "insider" (Complaint ¶¶ 88, 108, 135, 164).

Because the Complaint pleaded facts sufficient to sustain a plausible claim for relief under Bankruptcy Code § 548(a)(1)(A) and (B), Counts IV(c)(i) and IV(c)(ii)(1) of the Complaint also state plausible claims for relief under N.H. Rev. Stat. § 545-A:4(I)(a) and (b) and § 545-A:5(I), respectively.  Like Count IV(a), Count IV(c)(ii)(2) of the Complaint fails to state a plausible claim for relief under § 545-A:5(II) because it alleges that the Debtor had no liability to FLO as of December 31, 2016 (Complaint ¶ 92) and that FLO owed the Debtor $370,190 (Complaint ¶ 93).  Although the Complaint alleges sufficient facts to support a finding that FLO was an insider of the Debtor (Complaint ¶ 108) due to the Debtor's status as an officer and director of FLO, it does not allege the existence of an antecedent debt owed by the Debtor to FLO.  Accordingly, the Motion is **GRANTED** as to Counts IV(a) and (c)(ii)(2), and **DENIED** as to Counts IV(b), V(c)(i), and IV(c)(ii)(1).

    *ii.*   Count V: Avoidance of $201,000 Transfer Made by FLO to JFL

Count V seeks to avoid FLO's alleged transfer of $201,00 to JFL on May 25, 2017[43] under Bankruptcy Code §§ 547 ("Count V(a)") and 548 ("Count V(b)") and the UFTA with respect to creditors and other persons holding claims that arose before or after the transfer, including those named in the Debtor's Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:4(I)(a) and (b)) (herein, "Count V(c)(i)") and/or creditors and other persons "whose claim[s] arose before the transfer w[as] made," including without limitation, those named in the Debtor's

---

[43] See Footnote 15 (construing the Complaint and the allegations contained therein as alleging that the Debtor opened the JFL Account on May 25, 2017, and that the alleged transfer of $201,000 from FLO to JFL occurred on the same day).

Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:5(I) and (II) (herein, "Counts V(c)(ii)(1) and (2)").

Count V(a) does not state a plausible claim for relief under Bankruptcy Code § 547(b) because the Trustee has failed to allege sufficient facts that, if accepted as true, would support a finding that JFL was a creditor of the Debtor (or FLO, for that matter).  See 11 U.S.C. § 547(b)(1) (requiring the transfer to be made "to or for the benefit of a creditor").  Indeed, the Trustee alleged that "neither the [Debtor] nor [FLO] was indebted to [JFL] on or before May 25, 2017 (Complaint ¶ 118.  As a result, the factual allegations in the Complaint are also insufficient to sustain Count V(a) because they fail to allege that the Debtor made the transfer "for or on account of an antecedent debt owed by [him] before such transfer was made."  11 U.S.C. § 547(b)(2).  Even if the Court were to treat the Debtor and FLO as a single entity and attribute the actions and conduct of the Debtor as being those of FLO and visa-versa (which is distinct from assessing liability on a corporate shareholder pursuant to the alter ego doctrine and veil piercing), the Complaint fails to establish that JFL was a creditor of the Debtor or FLO.[44]  For these reasons, the Motion is **GRANTED** as to Count V(a).

Count V(b) states a plausible claim for relief under Bankruptcy Code § 548(a)(1)(A) and (a)(1)(B).  The Complaint alleges that the Debtor used FLO, his alleged alter ego, to move some of the Newtek Loan Proceeds, which the Debtor had an interest in, beyond the reach of the Debtor's creditors by opening the JFL Account and directing FLO to transfer $201,000 from the FLO St. Mary's Account to the JFL Account (Complaint ¶¶ 26, 27, 30-32, 120-22), both of

---

[44] The Court notes that the Motion admits that Mrs. Foistner and Mr. Atkisson were creditors of FLO.  See Memorandum at 18 ("The $202[,000] transfer . . . included [Mrs. Foistner and Ray Atkisson's] $68[,000]" which was "loaned from both [Mrs. Foistner and Mr. Atkisson], to allow for payment of [FLO's] expenses because the Newtek Loan was six months late, and their funds were needed to keep the credit of [FLO] in good standing, until the following month, April of 2017, when the Newtek Loan closed . . . .").

which were closed shortly thereafter (Complaint ¶¶ 72, 123, 124).[45]  These allegations, if true, combined with those regarding the Debtor's insolvency and FLO's insolvency (Complaint ¶¶ 93, 104) and the Debtor's failure to disclose JFL in his Bankruptcy Schedules or Statement of Financial Affairs, are sufficient to support a finding that the Debtor (and/or FLO) was engaged in a scheme to delay, hinder or defraud his creditors.  Count V(b) also pleads sufficient facts to support a claim for relief under Bankruptcy Code § 548(a)(1)(B) as it alleges that the Debtor did not receive any consideration for the transfer (Complaint ¶ 134), was insolvent when the transfer was made or became insolvent due to the transfer (Complaint ¶¶ 90, 93, 134), was about to engage civil and criminal litigation that would incur, or that he believed would incur, debts beyond his ability to pay (Complaint ¶¶ 18, 77, 134(d), 135), and that JFL was an insider of the Debtor (Complaint ¶ 116).  Accordingly, the Motion is **DENIED** as to Count V(b).

Having determined that Count V(b) of the Complaint sufficiently pleads facts that, if true, state a plausible claim for relief under Bankruptcy Code § 548(a)(1)(A) and (B), the Court concludes that Count V(c)(i) and Count V(c)(ii)(1) also state plausible claims for relief under N.H. Rev. Stat. Ann. § 545-A:4(I)(a) and (b) and N.H. Rev. Stat. Ann. § 545-A:5(I), respectively.  Like Count V(a), Count V(c)(ii)(2) fails to state a plausible claim for relief because the Complaint did not plead facts that, if true, establish that FLO's transfer to JFL was "for an antecedent debt," which is required to sustain a plausible claim for relief under N.H. Rev. Stat. Ann. § 545-A:5(II).  Accordingly, the Motion is **GRANTED** as to Count V(c)(ii)(2) and **DENIED** as to Count V(c)(ii)(1).

---

[45] The Motion admits that the "money was transferred in order to protect the creditors of [FLO]."  Memorandum at 18.  The Court has already determined that the Complaint alleges sufficient facts to support a claim that the Debtor used FLO as his alter ego and that he treated FLO's assets and bank accounts as his own.

     *iii.* Count VI: Avoidance of $201,000 Transfer Made by JFL to Mr. Atkisson

Count VI seeks to avoid JFL's alleged transfer of $201,00 to Mr. Atkisson on May 25, 2017, under Bankruptcy Code §§ 547 (herein, "Count VI(a)") and 548 (herein, "Count VI(b)") and the UFTA with respect to creditors and other persons holding claims that arose before or after the transfer, including those named in the Debtor's Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:4(I)(a) and (b)) (herein, "Count VI(c)(i)") and/or creditors and other persons "whose claim[s] arose before the transfer w[as] made," including without limitation, those named in the Debtor's Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:5(I) and (II)) (herein, "Counts VI(c)(ii)(1) and (2)").

The Motion appears to seek dismissal of Count VI in its entirety on the basis that the Trustee has alleged insufficient facts to sustain a plausible claim under Bankruptcy Code § 547(b) as it relates to JFL's alleged transfer to Mr. Atkisson. In so arguing, the Motion asserts that: (i) neither Mr. Atkisson nor Mrs. Foistner are "insiders" of the Debtor; (ii) the $201,000 was FLO's property, not property of the Debtor; (iii) Mr. Atkisson and Mrs. Foistner were creditors of FLO; and (iv) the transfer happened after May 30, 2017. According to the Motion, the Trustee may not avoid the $201,000 transfer because it was both a repayment of a loan given by Mr. Atkisson to FLO and payment for ongoing work that Mr. Atkisson was performing for FLO. The Court construes this argument to be a factual defense and, thus, irrelevant to the Rule 12(b)(6) analysis. The Motion also appears to argue that Count VI fails to state a claim for relief because the factual allegations do not satisfy the elements of a claim under Bankruptcy Code §§ 547 and/or 548 without piercing the corporate veil (and presumably treating the Corporate Defendants and/or Trust Defendants as the Debtor's alter egos).

Count VI(a) fails to state a plausible claim for relief under Bankruptcy Code § 547(b) because it does not allege facts sufficient to demonstrate that Mr. Atkisson was a creditor of the

Debtor or JFL.  Rather, it alleges that neither the Debtor nor JFL was indebted to Mr. Atkisson on May 25, 2017 (Complaint ¶ 150).  Moreover, it does not allege that the transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. § 547(b)(2).  Count VI(c)(ii)(2) similarly fails to state a plausible claim for relief under N.H. Rev. Stat. Ann. § 545-A:5(II) as the Complaint does not allege that the transfer was made to Mr. Atkisson for an antecedent debt.  Accordingly, the Motion is **GRANTED** as to Count VI(a) and Count VI(c)(ii)(2).

Count VI(b) fails to state a plausible claim for relief under Bankruptcy Code § 548(a) because it alleges that the Debtor via JFL, his alleged alter ego, made the transfer to Mr. Atkisson.  As the Court explained in its analysis of Count II, the Trustee has not alleged sufficient facts to support the application of the alter ego doctrine or veil piercing and/or reverse veil piercing to a Massachusetts revocable nominee trust under New Hampshire law or the Court's treatment of the Debtor, the Trust Defendants, and their trustees or beneficiaries as a single entity under New Hampshire or other applicable law.  Moreover, according to the Complaint and the JFL trust documents (Second Venuti Declaration, Exhibit BV1) that the Trustee submitted in support of the Second Supplemental Objection, neither the Debtor nor Mr. Atkisson were trustees or beneficiaries of JFL on May 25, 2017 (Complaint ¶ 12(a); Second Venuti Declaration, Exhibit BV1 at 9-13).  Thus, they lacked both an equitable and legal interest in JFL's trust property at the time of JFL's alleged transfer of Newtek Loan Proceeds to Mr. Atkisson and the legal ability to direct the actions of JFL's trustee (Mrs. Foistner) or permit the transfer to be made, which contradicts the allegations made in the Complaint.  For these reasons, Count V(b) and Count V(c)(ii)(1) fail to state a plausible claim for relief under Bankruptcy Code § 548(a) and (b) and N.H. Rev. Stat. Ann. § 545-A:5(I), respectively.

Accordingly, the Motion is **GRANTED** as to Count VI in its entirety.

*iv.* Count VII: Avoidance of Post-Petition Transfers Made by American Corporate to Mrs. Foistner and DCMV Trust

In Count VII, the Trustee seeks to avoid the post-petition transfers made by the Debtor and/or American Corporate to DCMV and/or Mrs. Foistner, in her capacity as DCMV's trustee, in the amounts of $20,000 on August 18, 2017 (Complaint ¶¶ 38, 163, 166) and $16,000 on September 5, 2017 (Complaint ¶¶ 40, 163, 167), for a total amount of $36,000 pursuant to Bankruptcy Code § 549 and to recover their value from DCMV pursuant Bankruptcy Code §§ 550 and 551 (Complaint ¶ 170).  In support, the Complaint contends that American Corporate became property of the bankruptcy estate on the Petition Date because it was wholly owned by the Debtor (Complaint ¶ 165).  It further alleges that the $36,000 in transfers to DCMV and/or Mrs. Foistner were not authorized by the Court or any provision of the Bankruptcy Code (Complaint ¶ 169).  Because the Court dismissed Count I of the Complaint, which sought a declaratory judgment that FLO and American Corporate were property of the bankruptcy estate, the Complaint must allege sufficient facts that, if true, establish that American Corporate received some of the Newtek Loan Proceeds, or otherwise possessed assets of the Debtor that were transferred prior to the Petition Date, making American Corporate and/or DCMV transferees.

Although not clearly stated, the Motion appears to seek to dismiss Count VII on the basis that: (i) the transfers were made after the Petition Date (Memorandum at 19), (ii) American Corporate and the Debtor are separate and distinct entities (Memorandum at 23), (iii) there was no *de facto* merger between FLO and American Corporate (Memorandum at 23); American Corporate is not the alter ego of the Debtor (Memorandum at 24), and (iii) Mrs. Foistner is not a creditor of the Debtor (Memorandum at 19).

Count VII of the Complaint fails to state a plausible claim for relief because the Trustee has not alleged facts to establish that any of American Corporate's assets, including the $36,000 allegedly transferred to DCMV post-petition were the Debtor's property or property of the bankruptcy estate. While the Trustee alleged sufficient facts that, if true, support the conclusion that $202,206 transfer from the Debtor to FLO was a transfer of the Debtor's property (Count IV), the Complaint does not allege that the Debtor, in his capacity as an officer of FLO, transferred the remaining Newtek Loan Proceeds or other assets of FLO to himself and then to American Corporate prior to the Petition Date. Because the Court dismissed Count I, which alleged that FLO and American Corporate and their assets were property of the estate, Count VII must otherwise plead sufficient allegations that, if true, support the conclusion that the Debtor had a pre-petition interest in the $36,000 that American Corporate transferred to DCMV.

Although the Trustee pleaded facts that were sufficient to sustain Count III's claim for successor liability based on an alleged *de facto* merger between FLO and American Corporate, the Complaint is missing factual allegations that support the Debtor having a pre-petition interest in the $36,000 that American Corporate transferred to DCMV. Unlike in Count IV, which alleged that the Debtor's issuance of a bank check from FLO's Merrimack Account to himself in his individual capacity made him the owner of the $202,246 (Complaint ¶ 97), Count VII makes no such allegations. Moreover, neither FLO nor American Corporate are debtors in this bankruptcy case. While the alter ego theory may be available to the Trustee to assess liability on the Debtor for the debts of FLO and American Corporate, the Court has already explained the limitations of the doctrine and rejected the Trustee's single entity theory (Complaint ¶ 73). In short, the alter ego theory does not enable this Court to treat American Corporate and its property as the Debtor's property, at least at this stage of the litigation and on these alleged facts.

As the Court previously explained in its analysis of Count II, although the Trustee has not explicitly articulated a claim for substantive consolidation as a cause of action in the Complaint, the allegations contained therein appear to fairly sound in that theory, and may be more clearly framed as such in the amended complaint that the Trustee has already requested leave to file under Rule 15(a)(2) and Bankruptcy Rule 7015.  Accordingly, the Motion is **DENIED** without prejudice as to Count VII pending the Trustee's filing of an amended complaint that seeks the substantive consolidation of the Debtor, the Corporate Defendants, and the trustees and beneficiaries of the Trust Defendants.

       *v.*    Count VIII: Avoidance of Transfer of Mercedes Benz to Mr. Atkisson

In Count VIII, the Trustee seeks to avoid the Debtor's transfer of Mercedes Benz and 2013 F-350 to Mr. Atkisson under Bankruptcy Code §§ 547 (herein, "Count VIII(a)") and 548 (herein, "Count VIII(b)") and the UFTA with respect to creditors and other persons holding claims that arose before or after the transfer, including those named by the Debtor in his Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:4(I)(a) and (b)) (herein, "Count VIII(c)(i)") and and/or creditors and other persons "whose claim[s] arose before the transfer w[as] made," including without limitation, those named in the Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:5(I) and (II) (herein, "Counts VIII(c)(ii)(1) and (2)").  The Motion moves to dismiss Count VIII in its entirety on the basis that the Trustee failed to pleaded "with particularity the circumstances constituting how the sale of" the 2013 F-350 and Mercedes Benz that "paid the bank off in full" was an unlawful act.  In support, the Motion states that the Debtor realized a sale price for the vehicles, which exceeded their "Blue Book" values and allowed him to pay off Merrimack Federal, the lender bank and creditor of the Debtor, in full.  The Court construes this argument to be a factual defense and, thus, irrelevant to the Rule 12(b)(6) analysis.

Count VIII(a) fails to state a plausible claim to avoid a preferential transfer under Bankruptcy Code § 547(b)(1) because the Complaint alleges that the Debtor was not indebted to Mr. Atkisson on May 25, 2017 (Complaint ¶ 150), which is the date the Debtor allegedly transferred the Mercedes Benz to Mr. Atkisson (Complaint ¶ 29).  See 11 U.S.C. § 547(b)(1). Moreover, it does not allege that the Debtor was indebted to Mr. Atkisson on May 29, 2017, the date on which the Debtor allegedly transferred the 2013 F-350.

Counts VIII(b), (c)(i), and (c)(ii)(1) state plausible claims for relief under Bankruptcy Code § 548(a)(1), and the UFTA.  The Complaint alleges that: (i) the Debtor had an interest in the Mercedes Benz and 2013 F-350 (Complaint ¶¶ 23, 28, 35, 176); (ii) the transfer occurred within  two years of the Petition Date (Complaint ¶¶ 28, 178); (iii) the Debtor received less than the reasonably equivalent value for the transfer (Complaint ¶¶ 29, 181(a)); (iv) the Debtor was insolvent on the date the transfer was made as evidenced by his Bankruptcy Schedules or became insolvent as a result of the transfer (Complaint ¶ 181(b)); (v) the Debtor was engaged in civil and criminal litigation and the continuation of the New Boston Development scheme while being undercapitalized (Complaint ¶ 181(c)); and, in light of the pending litigation, (vi) intended to incur or believed he would incur debts beyond his ability to pay (Complaint ¶ 181(d)).  The Complaint further alleges that Mr. Atkisson was the Debtor's business partner, or the functional business partner of the Debtor in the New Boston Development scheme, and that the Debtor retained possession of the vehicle despite having transferred it to Mr. Atkisson (Complaint ¶ 182).  Accordingly, the Complaint sufficiently alleges facts that, if true, support avoidance of the transfer as either a fraudulent transfer or constructively fraudulent transfer under the Bankruptcy Code or New Hampshire law.

Count VIII(c)(ii)(2) fails to state a plausible claim for relief under N.H. Rev. Stat. Ann. § 545-A:5(II) because the Complaint does not allege that Mr. Atkisson was a creditor of the Debtor

or that the transfer was made on account of an antecedent debt.  Accordingly, the Motion is **GRANTED** as to Count VIII(a) and Count VIII(c)(ii)(2), and **DENIED** as to Counts VIII(b), VIII(c)(i), and VIII(c)(ii)(1).

> *vi.*   Count IX: Avoidance of Transfer of F-350 to Mrs. Foistner

In Count IX, the Trustee seeks to avoid the Debtor's transfer of an interest in the F-350 to Mrs. Foistner as a fraudulent transfer under Bankruptcy Code § 549 (herein, "Count IX(a)") and a fraudulent transfer under § 548 (herein, "Count IX(b)") and the UFTA with respect to creditors and other persons holding claims that arose before or after the transfer, including those named by the Debtor in his Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:4(I)(a) and (b)) (herein, "Count IX(c)(i)") and/or creditors and other persons "whose claim[s] arose before the transfer w[as] made," including without limitation, those named in the Debtor's Bankruptcy Schedules (N.H. Rev. Stat. Ann. § 545-A:5(I) and (II) (herein, "Counts IX(c)(ii)(1) and (2)"). Although Count IX cites Bankruptcy Code § 547, it appears that this was a result of the Trustee's counsel editing language used in his other claims.

The Motion moves to dismiss Count IX on the basis that the Trustee failed to plead "with particularity the circumstances constituting how the sale of the . . . Ford Truck that paid the bank off in full" was an unlawful act.  In support, the Debtor states that he realized a sale price for the F-350 Truck which exceeded its "Blue Book" value and allowed him to pay off the lender bank and creditor in full.  The Motion does not appear to address the sufficiency of the allegations relating to the Trustee's apparent § 549 claim against Mrs. Foistner.

The Complaint alleges that the Debtor paid off Merrimack Federal's lien on the F-350 Truck on the Petition Date (Complaint ¶ 35), leaving the vehicle unencumbered.  In September of 2017, the Debtor allegedly transferred the F-350 Truck to Mrs. Foistner and himself for no consideration, and without the Court's approval (Complaint ¶¶ 41, 190, 194, 195).  At some

point, Mrs. Foistner encumbered the F-350 Truck in exchange for a loan from St. Mary's Bank, using the proceeds for her own purposes (Complaint ¶¶ 42, 192).  In April of 2018, Mrs. Foistner allegedly sold the F-350 Truck and used the proceeds to purchase another vehicle (Complaint ¶¶ 43, 194).  The Complaint further alleges that the Debtor: was insolvent, or became insolvent as a result of the transfer, when he transferred the F-350 Truck to Mrs. Foistner as evidenced by his Bankruptcy Schedules (Complaint ¶ 197(b)); was engaged in civil and criminal litigation and the continuation of the New Boston Development scheme while being undercapitalized (Complaint ¶ 197(c)); and, in light of the pending litigation, intended to incur or believed he would incur debts beyond his ability to pay (Complaint ¶ 197(d)).  Finally, the Complaint further alleges that Mrs. Foistner was the Debtor's business partner or his functional business partner in the New Boston Development scheme and participated in a sham marital separation from the Debtor, which the Debtor used to justify payments to her (Complaint ¶ 198).

Count IX(a) states a plausible claim for avoidance and recovery of a post-petition transfer under § 549 and 550 as it sufficiently alleges that the Debtor had an unencumbered interest in the F-350 Truck on the Petition Date, resulting in the estate having an unencumbered interest in the vehicle, which was allegedly transferred to the Debtor and Mrs. Foistner post-petition without the Court's approval.  Count IX(c)(i) and Counts IX(c)(ii)(1) and (2) also state plausible claims under the UFTA because they allege sufficient facts to support the finding that the Debtor made the transfer to hinder, delay, or defraud his creditors (whether their claims arose before or after the transfer).  The Complaint further alleges that Mrs. Foistner was an insider, that the Debtor retained possession and control over the vehicle, was insolvent at the time of the transfer, received no consideration for the transfer, and was embroiled in civil and criminal litigation.  Count IX(b) fails to state a plausible claim under Bankruptcy Code § 548 as to Mrs. Foistner because the transfer allegedly happened in September of 2017, which was after the Petition Date

(as opposed to within two years before the date).  For these reasons, the Motion is **GRANTED** as to Count IX(b), and **DENIED** as to Count IX(a) and Counts IX(c)(i),(c)(ii)(1), and (c)(ii)(2).

E.   The Trustee's Claim for Aiding and Abetting

The Debtor moves to dismiss Count X, stating that the Trustee failed to plead with "particularity the circumstances constituting how all of the defendants became parties that aided and abetted fraud that never occurred . . . ."  In his final Count, the Trustee alleges that the Mrs. Foistner, Mr. Atkisson, the Trust Defendants, and the beneficiaries and trustees of the Trust Defendants committed one or more tortious or unlawful acts, which include but are not limited to:

> (i) using materially misleading personal financial statements and actual construction cost appraisals to convince private investors to provide equity capital in connection with the New Boston Development in federally insured depository institutions to lend money to the Debtor and one or more of the Corporate Defendants and/or Trust Defendants;
> (ii) transferring assets belonging to one the corporate and trust defendants another corporate trust defendant to prevent investors and creditors exercising their lawful rights;
> (iii) threatening to bring and bringing unmeritorious counterclaims against creditors;
> (iv) attempting to prevent or delay litigation claims made against them, by making delegation of claims against the Debtor and the Corporate and/or Trust Defendants imitatively expensive or emotionally difficult by asserting claims against council in the trial judge and beginning criminal and civil litigation proceedings state of New Hampshire; and
> (v) concealing, diverting, hiding and transferring property of the Bankruptcy Estate in violation of federal and state law and making post-petition transfers without Bankruptcy Court approval.

See Complaint, ¶ 204.  These actions, if true, clearly amount to tortious conduct.  Count X further alleges that Mr. Atkisson, Mrs. Foistner and the Trust Defendants and/or their trustees and beneficiaries: (i) knew or should have known of their participation in furtherance of the New Boston Development or the Concealment Scheme; (ii) authorized or permitted the transfers to be

made; and (iii) provided substantial assistance and encouragement to the Debtor and other "Foistner Entities" in connection with the Concealment Scheme, including the filing, prosecuting, or providing of financial support for administrative, civil and criminal complaints filed or to be filed against public officials as part of the Concealment Scheme (Complaint ¶ 206). The Complaint further alleges that each beneficiary of the Trust Defendants who authorized, participated in, or permitted the transfers provided substantial assistance and encouragement to the Debtor and the Corporate Defendants in connection with the Concealment Scheme (Complaint ¶ 207).   Finally, the Trustee alleges that the insolvency of the Debtor and the Corporate Defendants was deepened to the detriment of the bankruptcy estate and creditors due to the Debtor's actions and the alleged substantial assistance of the Trust Defendants and their beneficiaries and trustees (Complaint ¶¶ 206, 207, 209).

While none of the parties addressed whether New Hampshire law recognizes the tort of aiding and abetting as to any of these allegedly tortious actions pursuant to the Restatement (Second) of Torts § 876(b), the Court finds that the allegations contained in Count X are sufficient to state a plausible claim for aiding and abetting what appears to be facially tortious conduct as to the trustees and/or beneficiaries of the Trust Defendants, only.  The Trustee has not alleged sufficient facts to state a plausible claim against unknown Jane and John Doe defendants.

Accordingly, the Motion is **DENIED** as to Count X without prejudice pending the Trustee perfecting service on the trustee and beneficiaries of the Trust Defendants in their capacity as beneficiary and/or trustee.

## V.  Leave to Address Service and Amend the Complaint

In his Objection, the Trustee seeks an extension of the period within which he may perfect service pursuant to Bankruptcy Rule 7004(m) for good cause.  In light of Mrs. Foistner's Declaration and Notice, which indicate that Mrs. Foistner exercised her authority as the

beneficiary and trustee of DCMV to remove Ms. Prive and Mr. Atkisson as beneficiary and trustee of DCMV (in apparent anticipation of the Prive Settlement Agreement and the Atkisson Settlement Agreement), the Trustee also seeks leave to amend the Complaint to add additional parties, and/or claims against the Debtor, Mrs. Foistner, and/or Mr. Shuhlen, the beneficiary of DCVM upon Mrs. Foistner's death.

In support, the Trustee states that the 90-day extension period provided under Bankruptcy Rule 7004(m) would have expired on August 31, 2019, had the Court not stayed the proceeding on August 7, 2019 (Bankruptcy Case, Doc. No. 372), which the Court dissolved on June 24, 2022.  Although the Court explicitly excepted from the stay the Trustee filing pleadings "and taking such actions as may be necessary to complete service," the Court agrees that the Trustee acted in good faith in attempting to serve the Corporate Defendants, the Trust Defendants, and the trustees and beneficiaries of the Trust Defendants and to accommodate the Debtor's request for a stay due to his then-pending criminal proceeding.  The Court further agrees that, based on the extended stay of this proceeding for the Debtor's benefit and the impact of the Debtor's criminal proceeding on the Court's ability to adjudicate this proceeding expeditiously, dismissal of this proceeding as to the Corporate Defendants, the Trust Defendants, and the trustees and beneficiaries of the Trust Defendants would be unfairly prejudicial due to the technical nature of the deficiency.

Turning to the Trustee's request for leave to amend the Complaint pursuant to Rule 15(a)(2) and Bankruptcy Rule 7015 (Doc. No. 263), the Court finds that the there is good cause to amend the Complaint, considering Mrs. Foistner's amendment to the DCMV trustees and beneficiaries, which had the effect of changing the status quo of the case.  As a result, the Trustee may file an amended complaint to assert additional claims against the Debtor and Mrs. Foistner in their various capacities, and Peter Shuhlen.

The Court cautions the Trustee that "[w]hile [Rule] 8(d)(2) allows a party to assert alternative claims based on the same facts, or alternative theories of liability, this practice may not provide 'fair notice to Defendants regarding what claim Plaintiffs are actually pursuing.'" DiTucci v. Ashby, Case No. 2:19-cv-277-TC-PMW, 2020 WL 1249627, at *10 (D. Utah Mar. 16, 2020). "The [C]ourt urges [the Trustee] to "consider whether all of [his] claims are equally meritorious and whether it is in [his] best interest to take a more focused approach on [his] theories of relief." Homes Dev. Corp., 2022 WL 4586480, at *22 (quoting Pigulski v. Johnson & Johnson, Inc., No. 18-CV-1061-LM, 2019 WL 2582540, at *4 (D.N.H. June 24, 2019) (citing Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir. 2008) ("A kitchen-sink complaint, unless dismissed for some central jurisdictional or pleading flaw, is likely to be hard slogging, requiring that counts be worked through one by one."))).

Accordingly, the Trustee shall have 28 days from the date of entry of this Memorandum Opinion and Order to file an amended complaint, and to properly serve it on all parties who have not yet been properly served, consistent with this opinion and the applicable Rules and Bankruptcy Rules. In his amended complaint, the Trustee shall set forth each cause of action separately, by numbered counts, to avoid the difficulties in discerning whether multiple causes of action are pleaded within any count. In addition, for all causes of action as to which the Motion to Dismiss is denied herein, the Debtor is required to answer each such cause of action alleged in the amended complaint, and may not move to dismiss those counts.

## VI.    Conclusion

For the reasons stated herein, the Court hereby **ORDERS**:

1.      The Motion is **GRANTED** as to Count I.

2.　　The Motion is **GRANTED** in part as to Count II in relation to the Trust Defendants themselves, and **DENIED** in part as to the Corporate Defendants and the trustees and beneficiaries of the Trust Defendants.

3.　　The Motion is **DENIED** as to Count III.

4.　　The Motion is **GRANTED** as to Count IV(a).

5.　　The Motion is **DENIED** as to Count IV(b).

6.　　The Motion is **DENIED** as to Count IV(c)(i).

7.　　The Motion is **DENIED** as to Count IV(c)(ii)(1).

8.　　The Motion is **GRANTED** as to Count IV(c)(ii)(2).

9.　　The Motion is **GRANTED** as to Count V(a).

10.　　The Motion is **DENIED** as to Count V(b).

11.　　The Motion is **DENIED** as to Count V(c)(i).

12.　　The Motion is **DENIED** as to Count V(c)(ii)(1).

13.　　The Motion is **GRANTED** as to Count V(c)(ii)(2).

14.　　The Motion is **GRANTED** as to Count VI in its entirety.

15.　　The Motion is **DENIED** without prejudice as to Count VII pending the Trustee's filing an amended complaint that alleges a claim for the substantive consolidation of the Debtor, the Corporate Defendants, and the trustees and beneficiaries of the Trust Defendants.

16.　　The Motion is **GRANTED** as to Count VIII(a).

17.　　The Motion is **DENIED** as to Count VIII(b).

18.　　The Motion is **DENIED** as to Count VIII(c)(i).

19.　　The Motion is **DENIED** as to Count VIII(c)(ii)(1).

20.　　The Motion is **GRANTED** as to Count VIII(c)(ii)(2).

21.　　The Motion is **DENIED** as to Count IX(a).

22.     The Motion is **GRANTED** as to Count IX(b).

23.     The Motion is **DENIED** as to Count IX(c)(i).

24.     The Motion is **DENIED** as to Count IX(c)(ii)(1).

25.     The Motion is **DENIED** as to Count IX(c)(ii)(2).

26.     The Motion is **DENIED** as to Count X without prejudice pending the Trustee perfecting service of an amended complaint on the trustee and beneficiaries of the Trust Defendants in their capacity as beneficiary and/or trustee.

27.     The Motion is **DENIED** without prejudice as to the Defendants' claims of deficient service and service of process pending the Trustee perfecting service of an amended complaint on the Debtor, Mrs. Foistner, and American Corporate in their respective capacities as trustee and/or beneficiary of a Trust Defendant.


        ENTERED at Concord, New Hampshire.


Date:   September 15, 2023            /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge